IDA HURVITZ *vs.* HARRY HURVITZ.

DECEMBER 22, 1922.

PRESENT: Sweetland, C. J., Vincent, Stearns, Rathbun, and Sweeney, JJ.

*(1). Divorce. Neglect to Provide. Time.*

Under cap. 247, § 2, Gen. Laws, providing that a divorce shall be decreed "for neglect and refusal for the period of at least one year *next* before the filing of the petition, on the part of the husband to provide necessaries for the subsistence of his wife, the husband being of sufficient ability" the word "Next" was purposely used in fixing the termination of the period of time the neglect and refusal to provide must continue, and it was error to enter a decree on the ground of neglect to provide for a period of more than one year, terminating fourteen months prior to the filing of the petition.

*(2) Divorce. Extreme Cruelty.*

In determining what acts or conduct amount to extreme cruelty much depends upon the intention of the parties, the results which follow and the habits and customs common to husband and wife. A divorce on this ground will be granted only upon affirmative convincing evidence that the petitioner is without fault and that the respondent has been guilty of an offence in violation of the marriage covenant.

*(3) Divorce. Extreme Cruelty.*

Evidence considered and held insufficient to establish the allegation of extreme cruelty.

DIVORCE. Heard on exceptions of respondent and sustained.

SWEENEY, J. The respondent has duly brought this cause before the court upon his exceptions to the decision of a justice of the Superior Court granting the petitioner an

absolute divorce upon the two grounds alleged in her petition, namely, (1) that the respondent has neglected and refused to provide necessaries for the petitioner for a period of at least one year before the filing of the petition and (2) that he has been guilty of extreme cruelty towards her.

The petition for divorce was filed September 28, 1921, and after a four days' trial in January, 1922, decision was rendered granting the petition.

The trial justice found that from April 9, 1919, to July 8, 1920 (15 months), the respondent neglected and refused to provide necessaries for his wife, although of sufficient ability to do so; that from July 8, 1920, to September 20, 1921, (14 months, 12 days), he was not obliged to support her because she was divorced from him during all of this time; and ruled that the uncondoned failure on the part of the respondent to provide necessaries for his wife for more than one year at some time prior to the filing of her petition was sufficient to require the court to grant the divorce.    The respondent took an exception to this decision and claims that it was error of law for the trial justice to rule that the neglect to provide necessaries for more than one year ending 14 months prior to the filing of the petition for divorce was a sufficient ground therefor, inasmuch as the statute requires that such neglect must be for the period of at least one year *next* before the filing of the petition for divorce.

The statute provides that divorces shall be decreed on several grounds, one of which is, "for neglect and refusal, for the period of at least one year *next* before the filing of the petition, on the part of the husband to provide necessaries for the subsistence of his wife, the husband being of sufficient ability."    Section 2, Chapter 247, General Laws, 1909.    The words used in stating the length of time the neglect and refusal to provide necessaries must continue are so clear and definite that they are susceptible of but one (1) meaning and no doubt or ambiguity can arise as to their meaning.    This being so, force and effect must be given to every word used and the court cannot change the termination

of the period of time prescribed by the statute.   To entitle a person to a divorce upon this ground, all of the elements stated therein must be proved, and in the case of *Hammond* v. *Hammond*, 15 R. I. 40, it was held that while the respondent's husband was imprisoned for two years in a penitentiary he did not have sufficient ability to provide necessaries for his wife and hence the statutory cause for divorce was not proved.   If the court should ignore the meaning and effect of the word "next" in the clause under discussion, it could also ignore the meaning and effect of the same word in section 10 of the same chapter which requires the petitioner for an absolute divorce to have resided in this state "for the period of two years *next* before the preferring of such petition," and it has been decided that the acquirement of residence or domicile is jurisdictional and must precede the preferment of the petition for divorce.   *Walker* v. *Walker*, 32 R. I. 28.   The court is of the opinion that the word "next" was purposely used by the legislature in fixing the termination of the period of time the neglect and refusal to provide necessaries must continue in order to render such neglect and refusal a ground for divorce.   It follows that the ruling of the trial justice that the respondent's neglect and refusal to provide necessaries for his wife for a period of more than one year, terminating 14 months prior to the filing of the petition for divorce, was sufficient ground therefor is erroneous, and the exception thereto is sustained.

The respondent also took an exception to the decision finding that he had been guilty of extreme cruelty and claims that the decision is contrary to the evidence and the weight thereof.   In determining what acts or conduct amount to extreme cruelty, much depends upon the intention of the parties, the results which follow, and the habits and customs common to husband and wife.   *Grant* v. *Grant*, 44 R. I. 169.   The state will permit a divorce to be granted only upon affirmative convincing evidence that the petitioner is without fault and that the respondent has been guilty of an

offense which is in violation of the marriage covenant. *McLaughlin* v. *McLaughlin*, 44 R. I. 429, 117 Atl. Rep. 649.

The probative value of the testimony of the petitioner is greatly impaired by the finding of the trial justice that she knew where to find the respondent and how to reach him from April, 1919, to July, 1920, and that if she had wanted to get in touch with him during that time she could have done so, when the record shows that she made an affidavit in her previous petition for divorce, filed November 12, 1919, in which she stated that the respondent was out of the state; that she had no information or belief as to his residence; and that she had not been able to ascertain his address or residence after reasonable inquiry and search for six months. July 27, 1921, the respondent filed a motion to vacate the final decree entered in said cause, stating as reasons therefor that the affidavit made by the petitioner was false inasmuch as she knew at all times where he could be found during the six months preceding the date of said affidavit, and September 20, 1921, a decree was entered vacating said final decree.

The testimony shows that the parties lived together as husband and wife in their own home until the death of their four-months-old child on the 17th day of March, 1919. Soon after this unhappy event they separated, she going to her mother's home and he going to Detroit early in April, 1919, where he remained until December, 1920, when he returned to Providence. She testified that he left her and that then she was obliged to return to her mother's house. He testified that they went to live at her mother's house, where he remained for a week, and that then he left because they accused him of being responsible for the death of the child. She admits that she accused him of killing the child but testified that the trouble did not start over its death. According to her testimony there was a few hours delay on his part in getting a doctor for the child but, as the child was sick for a long time and she was able to go out and attend to business matters for her husband, she could have

called a doctor for the child whenever she had thought that it required medical attention. The doctor came in response to the husband's call and testified that he had no hope for the child's recovery from the first, and said that the child should have received medical treatment at least two or three days before he was called.

The petitioner testified that the respondent staid out late about two nights each week at a gambling place; that he drank and gambled; and that when she tried to make a better man of him he would call her vile names. The respondent denied that he drank or gambled and said that when he was out nights he was attending a meeting of men engaged in his line of business. She testified that one night she and a neighbor went to the gambling place after her husband for the purpose of taking him home; that he ran out the back door and chased her up the street but did not catch her; and that he did not return home for three days thereafter. The respondent testified that on this occasion his wife threw stones through the windows in the building and that he was obliged to pay for them.

Another claim made by her is that he attempted to strike her with a piece of iron. It appears from the testimony that she called at his place of business and had an argument with him because he had given her a check which proved to be worthless. The petitioner called as a witness a man who worked for the respondent and who was present at the time He testified that the parties were quarreling and fighting over money matters, that she was cursing him and he was cursing her, that the respondent reached for a piece of iron, and that he (the witness) then stepped between them and put them out of the shop, locked the door, and afterwards gave the key to the respondent, his employer. The petitioner also claims that the respondent swore at her and called her vile names. A letter written by her has been introduced in evidence and in it she calls the respondent one of the names she testifies he called her.

There is nothing in the testimony to show that the petitioner was afraid to go after the respondent at any time or place or that she was apprehensive that he would cause her bodily harm.    Some of his misconduct of which she complains was provoked by her.    It appears from the testimony that when he used coarse language to her she retorted in kind.    There is no medical or other testimony to show that his conduct affected her health.  The testimony relating to the charge of extreme cruelty is meagre and unsatisfactory and is clearly insufficient to support the finding of extreme cruelty, and the exception thereto is sustained.

The petitioner may appear before this court, if she shall see fit, on Friday, December 29, 1922, at ten o'clock A. M., and show cause, if any she has, why an order should not be made remitting the case to the Superior Court with direction to dismiss the petition.

*Philip C. Joslin, Ira Marcus,* for petitioner.
*Bellin & Bellin, James B. Littlefield,* for respondent.