372 A.2d 1277.

IN RE GREGORY.

MAY 2, 1977.

PRESENT: Bevilacqua, C.J., Paolino, Joslin, Kelleher and Doris, JJ.

DORIS, J. This petition for adoption of a minor child without consent of the natural father, hereinafter referred to as the respondent, was brought by the natural mother of the child and her husband, hereinafter referred to as the

petitioners. After a hearing by a Family Court justice the petition was denied and from that denial the petitioners now prosecute an appeal to this court.

The record indicates that the mother and respondent were married on December 6, 1969, and of the marriage, Gregory, the child sought to be adopted, was born. The parents were divorced by decree of the Family Court on December 19, 1973, and custody of the child was awarded to the mother with reasonable visitation rights granted to respondent who was ordered to pay the amount of $11 weekly for support of Gregory. On April 20, 1974, the mother of the child married her present husband and on April 17, 1975, they filed a petition for the adoption of the minor child Gregory.

The petitioners allege that pursuant to G.L. 1956 (1969 Reenactment) §15-7-7 respondent, although financially able to do so, has neglected to provide proper care and maintenance for the child for more than one year next preceding the filing of the petition. The mother of the child consented to the adoption. In compliance with the relevant statute respondent was notified of the petition and a hearing thereon was held in Family Court. The respondent did not consent to the adoption but filed an objection wherein he stated that he was unemployed and unable to earn sufficient funds to support the minor child, Gregory. He also stated that he was receiving food stamps and general public assistance in the amount of $40 weekly from the State of Rhode Island and was attending school under a program administered by the State Division of Vocational Rehabilitation.

At the hearing, the mother testified that the only time she received any support payments for Gregory since the divorce was on June 19, 1973, the closing date for the sale of her and respondent's former residence at which time respondent paid $220 in arrearages which were then due

from his share of the proceeds of the sale. She further testified that respondent had visited or attempted to visit with the child on four occasions since the divorce, that respondent had been denied permission to take the child on his birthday in 1975, but instead had been invited to visit with the child at his home. She further stated that respondent had not made any phone calls to the child, nor sent Christmas cards, birthday cards or paid any attention at all to the child.

The respondent stated that he had made support payments in behalf of the child in the amount of $220. He testified that he was employed at Fulflex, Inc. between October of 1973 and February 1974, and that he left his employment because of a circulatory problem and went to Maine where he stayed with friends and although unemployed did a little farming, gardening and helping out around the place. He also testified that he made no attempt to obtain unemployment insurance and that since September 1974 he had been attending school under a program of the State Department of Vocational Rehabilitation and was receiving $40 weekly in public assistance. He further testified that he continued to suffer from circulatory problems which made prolonged sitting or standing difficult and it was this problem that caused him to leave his employment at Fulflex, Inc. He stated that he received $1400 from his share of the sale of the residence which he used for living expenses and an automobile van which he used for purposes of transportation. He testified that since September 1974, he had been barely able to support himself. The personnel supervisor from Fulflex, Inc., testified that respondent was employed from July 1973 to April 1974.

The trial justice found that respondent was receiving public assistance payments not because he was unwilling to work, but because of his physical condition. He found

that it was necessary for him to obtain guidance in vocational rehabilitation in order to place himself in a different field of employment. The trial justice further found that respondent was not financially able to provide proper care and maintenance for the child sought to be adopted for the year immediately prior to the filing of the petition for adoption.[1] On these findings the trial justice found that petitioners had not sustained the burden of proof and denied the petition.

The petitioners first argue that the trial justice erred when he found that respondent was financially unable to provide proper care and maintenance for his minor child during the year immediately prior to the filing of the petition for adoption. They point out that respondent voluntarily left his employment at Fulflex, Inc., and that he failed to apply for unemployment insurance. They further point out that he spent five months in Maine, and that he failed to produce evidence that he had attempted to find employment. They direct our attention to *In re Laporte,* 103 R.I. 232, 236 A.2d 264 (1967), where we stated that there will be a forfeiture of the parental right to withhold consent to an adoption only when it is shown that such neglect occurred while the offending parent had the ability and the opportunity to discharge the duty to provide support, and argue that respondent had the ability and opportunity to provide support and maintenance for Gregory. They further direct our attention to *In re Robert J., Jr.,* 113 R.I. 710, 326 A.2d 16 (1974), wherein we interpreted the words "financially able" to mean a consideration of the actual income, property, assets and earning ability as well as other attendant circumstances.

The respondent counters with the argument that there is evidence in the record of his inability to work due to

[1]The period involved was April 17, 1974 to April 17, 1975.

182

medical reasons as distinguished from *In re Robert J., Jr.,* *supra,* wherein the respondent of his own volition and without justification did not work and in fact refused to seek employment thereby failing to carry out his responsibility to support the minor children. He further argues that based on the payments which he receives from public assistance that he is unable to make payments for the support of the minor child.

It is well established that the findings of a trial justice are given great weight and will not be disturbed on appeal unless shown to be clearly wrong. *Menard* v. *Woonsocket Teachers' Guild — AFT* 951, 117 R.I. 121, 363 A.2d 1349 (1976); *Tente* v. *Tente,* 112 R.I. 636, 314 A.2d 149 (1974). On our review of the record we cannot say that the finding of the trial justice that respondent was financally unable to provide proper care and maintenance for the minor child was clearly wrong and we will therefore not disturb his finding.

The petitioners next urge that §15-7-7 as it refers to a parent's failure to provide support should be construed to mean a failure to support for *at least* a year prior to the filing of the adoption petition. They point out that a strict and literal construction of the statutory language could result in a case where a nonsupporting parent could make a token payment every 11 months and thus frustrate adoptive parents which would be an absurd and unreasonable result and clearly not the intent of the Legislature when it enacted the statute.

The respondent points out that adoption was unknown to common law and that therefore adoption statutes being in derogation of the common law must be strictly construed and literally applied. *Sklaroff* v. *Stevens,* 84 R.I. 1, 120 A.2d 694 (1956); *Smith* v. *Bradford,* 51 R.I. 289, 154 A. 272 (1931). He argues that the language of §15-7-7 is unambiguous and must be literally construed

particularly in view of the severe consequences visited upon the natural parents by the granting of an adoption petition and that the parents should be deprived of children only in extreme circumstances. *In re Robert J., Jr.* and *In re Laporte,* both *supra.*

The precise question has not been considered by this court as it relates to the adoption statutes. However, we have determined in earlier cases that in a petition for divorce on the grounds of neglect and refusal to provide that similar language relates to the year immediately prior to the filing of the petition. *Blatchford* v. *Blatchford,* 67 R.I. 24, 20 A.2d 539 (1941); *Hurvitz* v. *Hurvitz,* 44 R.I. 478, 119 A. 58 (1922). We see no reason why the language in §15-7-7[2] should be construed differently than that in §15-5-2.[3] We therefore hold that §15-7-7 should be strictly construed and literally applied, and that the year in question must relate to the year immediately preceding the filing of the petition of adoption which in the instant case is the period April 17, 1974 to April 17, 1975.

The trial justice was therefore correct in construing the statute to require that, with respect to the failure to provide proper care and maintenance for the child one year next preceding the filing of the adoption petition, the year in question must relate to the year *immediately preceding* the filing of the petition.

---

[2]Section 15-7-7 in pertinent part reads as follows:

"[O]r has neglected to provide proper care and maintenance for the child for one (1) year next preceding the time of the filing of the petition where financially able to do so * * *."

[3]Section 15-5-2 in pertinent part reads as follows:

"[A]nd for neglect and refusal, for the period of at least one (1) year next before the filing of the petition, on the part of the husband to provide necessaries for the subsistence of his wife * * *."

The petitioners' appeal is denied and dismissed and the case is remanded to the Family Court.

*Corcoran, Peckham & Hayes, Joseph T. Houlihan, Kathleen Managhan,* for petitioners.

*David F. Reilly,* Rhode Island Legal Services, Inc., for respondent.