232 A.2d 124.

Town of Lincoln *vs.* Joseph A. Cournoyer *et al.*

JULY 20, 1967.

Present: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

Roberts, C. J. This bill in equity was brought in 1957 pursuant to G. L. 1956, §45-24-7, to enjoin the use of certain lands in the town of Lincoln owned by the respondent Joseph A. Cournoyer in violation of the provisions of the zoning ordinance of that town. The cause came on to be heard on the complainant's motion to dispose of the contempt and to impose sentence. A justice of the superior court, after hearing thereon, imposed a fine of $250 and one half of the costs against each respondent. From that decree the respondents have prosecuted an appeal to this court.

The record discloses that on February 18, 1958, a decree was entered in this cause, in which it was found that the land involved was zoned in part agricultural and in part residential; that respondents were placing and storing on said land junk and other waste materials in violation of the zoning ordinance; and that such violation of the ordinance

514

constituted a public nuisance. In this decree respondents were permanently enjoined from making such use of the land and were ordered to remove therefrom all of the waste and junk material by the first of April 1958.

Subsequently, on November 10, 1959, a decree was entered in the superior court adjudging respondents to be in contempt for violation of the terms of the decree of February 18, 1958. Thereafter several abortive proceedings were instituted for the purpose of enforcing the decree of November 10, 1959, until on April 29, 1963 the instant motion to dispose of the contempt and to impose penalties was heard by a justice of the superior court. Thereafter a decree was entered on April 30, 1963, imposing a fine on each respondent. From that decree the instant appeal has been prosecuted to this court.

It is to be noted at the outset that no appeal was taken from the decree of November 10, 1959, adjudging respondents to be in contempt for failure to comply with the terms of the decree of February 18, 1958. Therefore, the hearing held on April 29, 1963, now under consideration, was held for the purpose of disposing of the contempt by the imposition of suitable penalties. In this latter hearing the merits of the adjudication of contempt were not in issue.

In the course of the April 1963 hearing, over objection of respondents, the court admitted into evidence testimony as to the conduct of respondents subsequent to the adjudication of contempt by the decree of November 10, 1959. This testimony came in during cross-examination of one of respondents, and in it he conceded that subsequent to that date they had brought on to the land in question secondhand automobiles and secondhand lumber. In this court respondents contend that it was error to admit into evidence testimony as to the conduct of respondents subsequent to the 1959 decree and that the only evidence admissible would be that concerning the conduct of the parties prior to the entry of that decree. With this argument we are unable to

agree. The view is so well settled as to require no citation of authority that testimony as to the conduct of a respondent subsequent to having been adjudicated in contempt is admissible on the issue of willfulness where the punishment to be imposed is under consideration.

We are, however, of the opinion that prejudicial error did inhere in a subsequent ruling made by the court during redirect examination of one of the respondents by his counsel. Counsel for this respondent sought to bring out in redirect examination facts concerning the material that had been brought to the land subsequent to the adjudication of contempt in November 1959. Redirect examination disclosed that some of this material was secondhand lumber which respondent testified was used in the construction of a garage on the land. Subsequently counsel asked this respondent whether there was "* * * anything on this land that you consider junk, Mr. Cournoyer?"

The court immediately interrupted the interrogation, stating: "That he considers junk gives me no illumination. He might consider nothing junk." To this counsel for respondent replied: "Very respectfully, Your Honor, the word junk was used." The court again stated: "You asked this witness if he considers it junk. He might not and it might be junk in my opinion or in anyone else's." To the next response of counsel we attach great significance, the response being: "I think it may go to the question of wilfulness." The court then stated: "I will not permit an answer to the question as to what he considers junk." Counsel for respondent excepted to this ruling and rested.

The contempt here was not a direct contempt and was committed out of the view of the court, and in such circumstances it is the duty of the court—in passing upon the question of the suitable and adequate punishment—to give a full hearing to the accused contemnor, and to allow him every opportunity to defend himself against the charge; and to determine whether or not the contempt is to be con-

tinued or may be purged by suitable corrective orders. The basic concept is stated in *Maggio* v. *Zeitz*, 333 U. S. 56, at page 76, where the court said: "The trial court is obliged to weigh not merely the two facts, that a turnover order has issued and that it has not been obeyed, but all the evidence properly before it in the contempt proceeding in determining whether or not there is actually a present ability to comply and whether failure so to do constitutes deliberate defiance which a jail term will break." It follows necessarily that if the court is obliged to weigh evidence upon the issue of whether there is a deliberate defiance of the court or whether the contempt could be terminated, it is obligated to entertain evidence which is relevant and material on this issue.

It has been repeatedly stated that where the contempt was committed out of the view of the court, " '* * * the offender must be allowed to offer evidence and argument in his defense * * *,' " *State* v. *Weinberg*, 229 S. C. 286, 292, 92 S.E.2d 842, 845; and even though the defendant admits the charge, it does not follow that he is not "* * * entitled to be heard, by witnesses and argument, in mitigation of the offense." *State ex rel. West Virginia-Pittsburgh Coal Co.* v. *Eno*, 135 W. Va. 473, 482, 63 S.E.2d 845, 850. In our opinion, the generally accepted rule is aptly stated in *Robinson* v. *Air Draulics Engineering Co.*, 214 Tenn. 30, 39, 377 S.W.2d 908, 913, as follows: "The nature of the inquiry in a contempt proceeding should admit of no strict or technical rulings against the accused, but the freest opportunity should always be given him to produce his defense."

We are of the opinion that where a direct contempt is not involved and evidence is offered that, if believed by the court, tends to mitigate the willfulness of the conduct constituting the contempt or would tend to establish that the contumacious conduct will not persist in continued defiance of the court, such testimony should be admitted into evidence, and ordinarily its exclusion will constitute prejudi-

cial error. Where such evidence is offered and rejected and punishment is imposed, absent some peculiar circumstances, we are of the opinion that the contemnor has been substantially prejudiced and that the ends of justice require that a new hearing be held.

We are well aware of the length of time that this matter has been in litigation and are reluctant to permit the controversy to persist any longer than is absolutely necessary. However, we are of the opinion that the trial justice, in refusing to admit into evidence testimony that, if believed, would tend to establish a lack of willfulness in the conduct of these contemnors or that they would not persist in the contempt, substantially erred and that a new hearing on this specific issue should be had.

The appeal of the respondents is sustained, the judgment appealed from is reversed, and the cause is remanded to the superior court with direction that a new hearing be held.