290 A.2d 600.

TOWN OF LINCOLN *vs.* JOSEPH A. COURNOYER *et al.*

MAY 10, 1972.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

KELLEHER, J. An examination of the record of this appeal gives credence to the cynics among us who are prone to describe the judicial processes as "the labyrinthian ways of the law."

The defendant appellant is Arthur Cournoyer. He and his father, Joseph A. Cournoyer, are the owners of a 36-acre parcel of land located in the town of Lincoln on Cobble Hill Road. They have used a portion of this parcel which is zoned for residential and agricultural purposes as a site for the storage and sale of waste and junk material.

This present proceeding had its genesis back on February 18, 1958, when a final decree was entered in the Superior Court finding that the Cournoyers' use of the parcel was a public nuisance and a violation of the Lincoln zoning ordinance. The decree ordered them to remove all waste

and junk from the premises by April 1, 1958. Although the validity of this decree has never been challenged, the Cournoyers have managed by their complete and utter disregard of the court's order and their numerous appeals to this court,[1] to keep the litter on their land and the town immersed in litigation for a period in excess of 14 years. During this interval, Arthur Cournoyer has been adjudged to be in contempt of the February 18, 1958 decree and as a result thereof, he has served a 90-day jail sentence and has been fined $250. These punitive measures have not forced the son to comply with the Superior Court's directive.

On November 9, 1970, Lincoln's town solicitor filed a petition in the Superior Court pursuant to the pertinent

---

[1](a) *Cournoyer* v. *Zoning Board,* 92 R. I. 42, 166 A.2d 128 (1960). We affirmed the zoning board's denial of the father's application for a variance so that he could operate a junkyard on a portion of the Cobble Hill Road premises that is zoned residential.

(b) *Town of Lincoln* v. *Cournoyer,* 95 R. I. 280, 186 A.2d 728 (1962). We reversed the Superior Court's finding of contempt which was based on a petition filed by a neighboring property owner because the zoning enabling legislation permits only the town solicitor to seek judicial assistance in enforcing the municipality's zoning ordinance.

(c) *Town of Lincoln* v. *Cournoyer,* 102 R. I. 512, 232 A.2d 124 (1967). This was a contempt proceeding brought against both Cournoyers. We reversed a Superior Court decree that had imposed a $250 fine on each of them because the trial justice erred when he refused to hear mitigating testimony which might have shown that the Cournoyers' disobedience was not wilful.

(d) *Cournoyer* v. *Sharkey,* 107 R. I. 373, 267 A.2d 722 (1970). This was a petition for habeas corpus in which we denied Arthur's claim that the Superior Court, when it reconsidered the town's petition to adjudge Cournoyer in contempt, exceeded its power when it added a 90-day jail sentence to the $250 fine previously imposed. It was during this hearing that the town indicated that it had no desire to proceed against the father who it felt was nothing but a nominal party to the later contempt proceedings.

provisions of G. L. 1956, §45-24-7,[2] in which he detailed the municipality's vain efforts to obtain Cournoyers' compliance with the law and then asked that the town be authorized to clear the property of its assortment of scrap, lumber, motors, truck and automobile bodies, inoperative motor vehicles, tires and other waste material and to charge the expense of their removal to defendant.

An order was entered by a justice of the Superior Court directing that notice of a hearing on the petition be given defendant's counsel of record. The notice and a copy of the petition were furnished to defense counsel. The hearing was held and a decree was entered appointing the town solicitor as a special master with full authority to bring about compliance with the February 18, 1958 decree. The decree afforded defendant a 60-day period during which, if he wished, he could remove the materials and be in compliance with the initial decree.

Even though man has traveled to and from the moon since Cournoyer first defied the Superior Court in 1958, defendant's position in 1972 is as intransigent and uncooperative as ever. He now argues that the Superior Court erred when it denied his motion to dismiss the town's latest petition. In making this contention, he claims that, since the February, 1958 decree is a final decree, the November 9, 1970 petition is a proceeding separate and apart from the original equity suit.[3] Therefore, he claims, the town should have paid a $5 filing fee, the clerk should

---

[2]This section affords a municipality with a wide variety of legal weapons to insure compliance with the local zoning law including the removal, at the owner's expense, of any "building, structure or other thing" that violates the ordinance.

[3]Such a contention brings to mind previous holdings made by this court in *Damm* v. *Damm*, 77 R. I. 24, 72 A.2d 839 (1950) and *Slater* v. *Slater*, 75 R. I. 19, 62 A.2d 897 (1948). In each case, a motion or a petition to modify a final divorce decree was served upon the attorney who had represented the nonmoving party in the original proceeding. The court ruled

have given the petition a new docket number and a citation should have been served upon him. Although defendant's concern for the $5 fee and its subsequent easing of the state's fiscal woes is laudatory, this portion of his appeal is meritless.

It is well settled that a court of equity has the power to issue all processes that may be necessary to effectuate its decree, including a writ of attachment (against the body), a writ of assistance (to deliver possession of real estate) and a bill to enforce a decree. 1 Whitehouse, *Equity Practice* §§418, 420 (1915). The bill to enforce a decree is usually referred to as a supplemental bill and is used to secure or preserve the fruits of a judgment or decree previously rendered. The second proceeding is ancillary to and dependent on the original cause or proceeding. Its goal is to effectuate the earlier decree to the end that the decree may be carried fully into execution so that it may be given full effect but subject to the qualification that the relief be not of a different kind or on a different principle. *Dugas* v. *American Surety Co.,* 300 U. S. 414, 57 S.Ct. 515, 81 L.Ed. 720 (1937); *Local Loan Co.* v. *Hunt,* 292 U. S. 234, 54 S.Ct. 695, 78 L.Ed. 1230 (1934); *Root* v. *Woolworth,* 150 U. S. 401, 14 S.Ct. 136, 37 L.Ed. 1123 (1893). The chancellor has full power to take such supplementary action, in the nature of contempt or otherwise, to compel obedience to his order. *Biggs Boiler Works Co.*

that the motion should be treated as initiating a proceeding which was independent of the original divorce suit. Consequently, the service on the attorney would not be considered as bringing his client before the court. Later, in *Hacking* v. *Hacking,* 78 R. I. 325, 82 A.2d 168 (1951), this court explained that the sole issue in the *Damm* and *Slater* cases was whether the solicitor of record for the respondent in an original divorce proceeding continued to be the solicitor after the entry of final decree so that service of motions on him was equivalent to notice to the respondent. It was emphasized in *Hacking* that a motion to modify a final decree need not necessarily be filed and docketed as a new proceeding.

v. *Smith*, 32 Del. Ch. 411, 82 A.2d 919 (1953). The equity court can divest and vest title where it had jurisdiction of the res by the appointment of a master who is deputized to execute the necessary conveyance. 1 Whitehouse, *Equity Practice, supra* at 667.

As we describe the powers of a court of equity, it must be kept in mind that with the entry of the February, 1958 decree and the subsequent march of time, there came a substantial procedural change with the adoption of the new Rules of Civil Procedure in the Superior Court. The new rules, which became effective on January 10, 1966, abolished the procedural differences that once existed between law and equity. The town's petition filed in November, 1970, and all subsequent proceedings were controlled by the new rules.

Rule 15(d) speaks of a "supplemental pleading." Both Rule 70 and G. L. 1956 (1969 Reenactment) §9-14-26 specifically authorize the appointment of a master in those instances where a party fails to do an act ordered by the court. The master is empowered to do the specified act with the costs thereof being assessed against the disobedient party. It follows, therefore, that the town's petition was a supplemental complaint which, like the powers referred to by the Supreme Court and Whitehouse, are designed to give vitality and meaning to the original decree which had ordered the Cournoyers to clean up their property and abide by the Lincoln zoning ordinance.

Finally, the defendant's assertion to the contrary notwithstanding, there was at least, figuratively speaking,[4] a "ton" of evidence before the trial justice which shows that Arthur Cournoyer has not complied with the decree entered on February 18, 1958. The time has now come when, at

---

[4] In the record are a series of photographs showing the accumulation of junk that has been deposited on the Cournoyers' land.

long last, compliance must be had with the town's zoning regulations.

The defendant's appeal is denied and dismissed. The judgment appealed from is affirmed.

*Louis E. Azar,* Town Solicitor, for plaintiff-appellee.

*Berberian & Tanenbaum, Aram K. Berberian,* for defendant-appellant Arthur Cournoyer.