375 A.2d 410.

Town of Lincoln *vs.* Arthur J. Cournoyer *et al.*

JULY 18, 1977.

Present: Bevilacqua, C. J., Paolino, Joslin, Kelleher and Doris, JJ.

645

KELLEHER, J. If the names "Town of Lincoln" and "Cournoyer" ring a bell with the reader, they should because this opinion marks the sixth time we have written about the town of Lincoln's efforts to have Joseph Cournoyer and his son, Arthur, obey the town's zoning ordinances. Since the town has conceded that the father has

had little to do with this ongoing controversy, we shall proceed as if the son, Arthur, is the sole owner of a 36-acre parcel of land located on Cobble Hill Road in an area of Lincoln which is zoned for residential and agricultural purposes. Arthur has used a portion of this site for the storage and sale of waste and junk material.

On February 18, 1958, a final decree was entered in the Superior Court, finding that Arthur's junkyard constituted a violation of the Lincoln Zoning Ordinance and ordering him to remove the junk by the following April 1. However, if Arthur believed that the rule of law has a place in our society, he obviously thought it applied to everybody but him because he has persistently refused to comply with the court's order. Arthur's junk has remained on Cobble Hill Road even though during the ensuing years he has been held in contempt on several occasions, fined, and imprisoned at the Adult Correctional Institutions.

Finally, in 1971 the Superior Court appointed the then town solicitor as a special master with full power to effectuate compliance with the 1958 decree. Once we affirmed this appointment in May 1972, the master turned to his task and, as will be seen, the travails and difficulties he encountered probably caused him to doubt the wisdom of the oft repeated adage which holds: "One man's trash is another man's treasurer."

On December 3, 1973, the master filed a petition for instructions, in which he listed expenses of over $4,900 for removing a portion of Arthur's junk from his property and storing it at another location. The master asked that he be allowed to submit the moving bill to Arthur for payment and, if payment was not forthcoming, to sell the newly stored junk. On December 14, 1973, Arthur filed a motion to vacate the 1958 decree. In mid-December Arthur's motion was denied, and the master was authorized to sell that junk by way of sealed bids if Arthur re-

fused to pay the moving expenses. On January 4, 1974, Arthur filed a notice of appeal, in which he challenged the denial of his motion to vacate.

On March 5, a hearing was held in Superior Court, at which the sealed bids called for in the December order were opened. The highest bid submitted was for $1,750. It was accepted, and an appropriate order was entered. It was obvious that the sealed-bids process had been something less than a smashing success because there was about a $3,200 shortfall between the master's receipts and his expenses.

Consequently, the master was forced to return to Superior Court, where he asked permission to solicit bids for the sale of all of the junk remaining on Arthur's property. This petition was approved, and on June 20, 1974 another order was entered, providing for the solicitation of bids for the sale of the Cobble Hill Road junk. In due course Arthur filed a notice of appeal from this order, and on October 15, 1974 the record was certified to this court.

Shortly after the record was docketed here, it was remanded to the Superior Court so that a hearing scheduled for October 25, 1974 could take place. The purpose of the hearing was to open and consider the bids called for in the June 20, 1974 order. On October 23 Arthur filed in the Superior Court a memorandum in which he alluded to the forthcoming hearing and repeated his objections to the 1958 decree and the June 1974 bid order. The October 25 hearing took place, and a bid of $7,500 was accepted for the junk that remained on Arthur's land. Five days later, on October 30, an order authorizing the acceptance of the $7,500 bid was entered, but no appeal was taken from the order.

Having set the stage for a consideration of the matters about which Arthur is presently complaining, we now

turn first to his latest attack on the 1958 decree and then discuss his appeal of the June 1974 order.

The thrust of Arthur's attack on the 1958 decree is his claim that he never authorized or acquiesced in its entry. He contends that his claim of a prior legal nonconforming use was a perfect defense to the town's complaint. He also argues that he is being denied due process because he has been denied his day in court so that he could be heard as to why he should not be held in contempt.

Having carefully reviewed the proceedings recounted above, we have determined that Arthur is not properly before us and that even if he were, it would be to no avail. Although the notice of appeal of the denial of his motion to vacate was filed on January 4, 1974, the appeal was never perfected under our Rule 11, which requires transmission of the record to this court within 60 days of the notice's being filed. Failure to perfect the appeal leaves Arthur in the same position as not having filed notice at all. *Colavecchio* v. *Houle,* 106 R.I. 529, 261 A.2d 649 (1970).

Arthur's challenge to the June 1974 order raises the issue of whether the grant of the solicitation-of-bids petition is appealable. As a general rule, this court will not review interlocutory orders or decrees unless the case falls within either of two well-recognized exceptions. One exception was created by the Legislature. It allows an appeal from an interlocutory order directing a "sale of real or personal property." General Laws 1956 (1969 Reenactment) §9-24-7. The other exception is decisional in origin, and under it we will review an order or decree which, although in a strict sense interlocutory, does possess such an element of finality that action is called for before the case is finally terminated in order to prevent clearly imminent and irreparable harm. This doctrine, having been first announced in *McAuslan* v. *McAuslan,*

34 R.I. 462, 83 A. 837 (1912), has been reiterated innumerable times since then.

The June 1974 order does not fall into either category. It is not within the reach of the statute because it did not authorize the sale of Arthur's junk. All the order did was allow the solicitation of bids, all of which might have been rejected by the trial justice, thereby leaving Arthur's status quo completely undisturbed and unharmed. It also follows that Arthur gains nothing from the *McAuslan* rule. The time to object was on October 25, 1974, when the $7,500 bid was accepted, and the appealable order was that entered on October 30. *See Taber v. West Shore Golf Club, Inc.,* 51 R.I. 390, 155 A. 349 (1931).

Normally, we would conclude our observations at this time. However, in the hope that what we say today might finally put this controversy to rest, we will proceed. The arguments presented by Arthur essentially constitute a collateral attack on judgments entered long ago and for which the time of appeal has long since passed.

First, his claim that he has not had his day in court on the issue of prior nonconforming use was rejected by this court on the basis of the doctrine of res judicata. *Cournoyer v. Sharkey,* 107 R.I. 373, 267 A.2d 722 (1970). All protestations to the contrary notwithstanding, we reiterate now what we said then. Arthur's contention that his junkyard predates the Lincoln Zoning Ordinance goes to the merits of the 1958 decree, which, being unappealed, renders the question of nonconforming use res judicata. *Id.* at 375, 267 A.2d at 723.

Secondly, we will not consider the contention that the February 18, 1958 decree was unauthorized. At that time §9-21-2 provided that, for cause shown, a court could relieve a party from a decree entered in an equity cause provided that appropriate motion was made within 6 months of the entry of the decree. Indeed, the record indicates that

on August 13, 1958 a motion to vacate the February 18 decree was filed. It raised substantially the same allegations as are before us today, but apparently no further action was taken at that time. Res judicata bars the relitigation of issues which were raised and abandoned 19 years ago. The 1958 judgment is final.

The record belies Arthur's third contention, that he has never had his day in court. The record is proof positive that Arthur relishes rhetoric rather than reality. We addressed the questions of contempt and prior nonconforming use in *Cournoyer* v. *Sharkey, supra.* Earlier in *Cournoyer* v. *Zoning Bd. of Review,* 92 R.I. 42, 166 A.2d 128 (1960), we reviewed the zoning board's denial of the father's application for a variance so that he could operate the Cobble Hill Road junkyard. The father's request for zoning relief is somewhat at odds with the son's contention that the junkyard had predated the advent of the zoning restrictions. Later, on two different occasions, we reversed the Superior Court's finding of contempt. *Town of Lincoln* v. *Cournoyer,* 102 R.I. 512, 232 A.2d 124 (1967); *Town of Lincoln* v. *Cournoyer,* 95 R.I. 280, 186 A.2d 728 (1962). When this case was last before us, in affirming the appointment of the master, we pointed out that even though a man had traveled to and from the moon since Arthur first defied the Superior Court in 1958, he was as intransigent and uncooperative as ever. *Town of Lincoln* v. *Cournoyer,* 110 R.I. 101, 290 A.2d 600 (1972). Arthur's intransigency has caused him to have more than his day in court. It has enabled him to make a lifetime career out of deliberately flouting judicial mandates, thereby causing an expenditure of judicial effort and time that could have been put to much better use elsewhere.

The defendant's appeal is denied and dismissed.

*Edward W. Moses, Esq.,* for plaintiff.

*Domenic A. Mosca, Esq.,* for defendant.