**In re JOSEPH T.**

**Nos. 89–196–M.P., 89–389–M.P., and 89–300–Appeal.**

Supreme Court of Rhode Island.

June 5, 1990.

James E. O'Neil, Atty. Gen., Mary Jude Nagle, Sp. Asst. Atty. Gen., Jeffrey Greer, Asst. Atty. Gen., Dorothy Lohmann, Rhode Island Legal Services, for plaintiff.

Richard Casparian, Public Defender, Paula Rosin, Asst. Public Defender, for defendant.

## OPINION

WEISBERGER, Justice.

This case comes before us on appeal and on petition for certiorari in order to review a Family Court decision to waive jurisdiction over the petitioner Joseph T. (Joseph), as well as from a decision of the Superior Court denying his motion for commitment to the training school while awaiting trial. The petitioner also purported to take a direct appeal from the Family Court's waiver order. One of the issues presented will be the question of the right to appeal from a Family Court waiver decision. The facts of the case insofar as pertinent to our review are as follows.

On September 24, 1988, William Roberts was beaten and kicked to death in the course of a robbery in which three juveniles and one adult participated. Evidence introduced at the waiver hearing resulted in a finding of fact by the trial justice that petitioner was involved in the initial stop of the victim as he drove by in a motor vehicle. Joseph then removed the keys from the ignition of the victim's motor vehicle. When the victim chased Joseph in order to retrieve his keys, Joseph and his confederates knocked Roberts to the ground and kicked and stomped upon him until he was dead. Witnesses testified, and the trial justice found, that petitioner repeatedly jumped up and down on the face and chest of the victim. He further found that Joseph's confederates yelled for him to stop but that he would not. Joseph admitted to having taken the victim's wallet but denied that he was the dominant attacker. Nevertheless, the trial justice found that there was clear and convincing evidence that Joseph did jump up and down on the victim. At the time of the commission of this alleged offense, Joseph was sixteen years and two months old. He had been the subject of a number of petitions before the Family Court but had not previously been adjudicated as wayward or delinquent. The trial justice found, after applying a clear and convincing evidentiary standard and considering his family and educational records as well as a complete social history, that the facilities available to the Family Court did not provide a reasonable prospect that petitioner would be rehabilitated thereby. He further stated that the probability exists that Joseph would remain dangerous to the public beyond the age of twenty-one, at which time the jurisdiction of the Family Court would end and he must be released regardless of the circumstances. He therefore concluded that the criteria for waiver of jurisdiction had been proven by clear and convincing evidence.

In challenging the findings and conclusions of the Family Court, petitioner and the state raise three issues. These issues will be dealt with in the order in which they are set forth in petitioner's brief and in the state's brief.

## I

### Is the Waiver of Jurisdiction Directly Appealable to this Court?

The petitioner points out that an appeal to this court shall lie "[f]rom any final decree, judgment, order, decision, or verdict of the family court." The petitioner further argues that the grant of waiver has such an element of finality that it should be reviewed as some federal courts have done under the rubric of the "collateral order doctrine" as enunciated in *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). *See, e.g., United States v. A.W.J.*, 804 F.2d 492 (8th Cir.1986); *United States v. C.G.*, 736 F.2d 1474 (11th Cir.1984).

This court has steadfastly maintained that it will entertain a direct appeal only from a final judgment. We have repeatedly enunciated the principle that appeals will not be permitted from interlocutory orders except in very limited and well-defined exceptions. *See, e.g., DeMaria v. Sabetta*, 121 R.I. 648, 402 A.2d 738 (1979); *Beauvais v. Notre Dame Hospital*, 120 R.I. 271, 387 A.2d 689 (1978); *Town of Lincoln v. Cournoyer*, 118 R.I. 644, 375 A.2d 410 (1977). Generally a final judgment is one that completely terminates the litigation between the parties. *Maloney v. Daley*, 115 R.I. 375, 346 A.2d 120 (1975). We recognize the critical importance of a waiver of jurisdiction by the Family Court. *Kent v. United States*, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966); *Knott v. Langlois*, 102 R.I. 517, 231 A.2d 767 (1967). Nevertheless, this critically important decision does not completely terminate the litigation between the parties. When a juvenile offender is waived from the Family Court to the Superior Court, he or she is entitled to all the procedural safeguards relating to a criminal trial.

Other courts have determined that the waiver of jurisdiction is not a final adjudication but is primarily a mechanism designed to protect the best interests of a juvenile and the public. *In re Clay*, 246 N.W.2d 263 (Iowa 1976). To the same ef-

fect are holdings in *D.H. v. People*, 192 Colo. 542, 561 P.2d 5 (1977) and *State of New Jersey in the Interest of R.L.*, 202 N.J.Super. 410, 495 A.2d 172 (1985).

We believe that the power of this court to issue a writ of certiorari to review an interlocutory order, decree, or judgment is a substantial safeguard so that a questionable decision of waiver could be reviewed by this court and we thus avoid the results urged by petitioner when a waiver determination is later overturned on appeal after a judgment of conviction. We believe, as have other courts, that the need for speedy trial and adjudication of the charges on their merits would be better served by not extending an appeal as of right subject to the power of this court to review a case on certiorari if it considers such a course to be appropriate in the exercise of its discretion. Our conclusion is strengthened by the facts of this case wherein nearly two years have passed since the occurrence of the tragic events giving rise to the present murder indictment without a trial on the merits.

■ Consequently we hold that a decision of waiver made by a justice of the Family Court is not appealable as of right to this court but may be reviewed pursuant to Rule 13 of the Supreme Court Rules of Appellate Procedure by petition for writ of certiorari.

## II

### Did the Trial Justice Abuse His Discretion in Deciding to Waive Family Court Jurisdiction over Joseph?

■ The trial justice conducted extensive hearings aggregating a total of seven days. He took into account the nature of the crime with which petitioner was charged and the social history of the offender and made specific findings in respect to the standards for waiver of jurisdiction set forth in Rule 12(c) of the Family Court Rules of Juvenile Proceedings. He further made specific findings in regard to each factor to be considered in determining waiver as set forth in Rule 12(d). We have examined the record of the hearings before the trial justice and find that the evidence overwhelmingly supports the meticulous analysis with which he carried out his function.

The trial justice was also mindful of the requirements of G.L.1956 (1981 Reenactment) § 14–1–7, which governs the discretionary waiver of jurisdiction. The court held a full investigation as required by the statute as well as making all the findings required by Rules 12(c) and 12(d).

The petitioner concedes that there was ample evidence to establish probable cause to believe that he had committed the crime of first-degree murder (an unlawful killing of a human being committed in the perpetration of a robbery), but argues that his capacity may have been diminished by ingestion of cocaine and/or alcohol. Suffice it to say that the partial defense of diminished capacity may be raised in the Superior Court and was not susceptible of being litigated on the evidence presented to the trial justice. Nevertheless, the trial justice did take into account the prior history of petitioner for cocaine use and sale in order to support his habit.

Even if the Superior Court were to find diminished capacity, drug use is not an excuse for criminal homicide but may only reduce the homicide to a lesser included offense of voluntary manslaughter. The trial justice's finding concerning the necessity of protecting the public would apply even in the case of voluntary manslaughter. In any event the arsenal of remedies available to the Family Court in the training school, even the structured youth-correctional facility, would be totally inadequate to protect the public against the dangerous proclivities evidenced by petitioner's conduct in this brutal incident, whether the ultimate finding by the Superior Court was murder in the first degree or a lesser included offense.

■ The Supreme Court of Pennsylvania in *Commonwealth v. Moss*, 518 Pa. 337, 543 A.2d 514 (1988), concluded that a gross abuse of discretion is not demonstrated by merely reciting facts of record that would support a result contrary to the court's actual decision. Under our standard of abuse of discretion, as opposed to gross

abuse, we would reach a similar conclusion that merely because some testimony may have been introduced that suggested that Joseph's relationship with some of his instructors and social workers indicated a possibility of rehabilitation, could not support a further conclusion that the trial justice had abused his discretion in deciding that waiver was appropriate. The Supreme Court of Connecticut commented upon a waiver determination in the case of a fifteen-year-old charged with robbery that "the trial court is in a unique position to assess all the factors relevant to a determination regarding youthful-offender treatment, and thus interference by this court must be limited to only those instances where that broad discretion has clearly been abused." *State v. Bell*, 179 Conn. 98, 101, 425 A.2d 574, 575–76 (1979).

In the case at bar, not only is there no indication of an abuse of discretion on the part of the trial justice, but a review of the record indicates that he came to the only reasonable conclusion in light of the evidence presented in the course of the waiver hearing. The petitioner's arguments on this issue are not persuasive.

### III

### Burden of Proof

In a supplemental memorandum the state raised the issue of the burden of proof to be applied by a Family Court justice in a waiver decision. Although this issue was not raised in the original briefs, petitioner opposes the suggestion that the appropriate burden of proof should be fair preponderance as opposed to clear and convincing evidence.

As we have pointed out earlier in this opinion, the trial justice applied a standard of clear and convincing evidence in the instant case. He analyzed the evidence in accordance with that standard and found that the state had met this exacting burden. We have already agreed that the state did establish the criteria for waiver by clear and convincing evidence.

Since the Family Court justice applied this standard, there is no basis for our reviewing his selection of the burden of proof in this case. Neither the state nor petitioner has any basis to challenge the Family Court's selection of the standard of proof in this litigation. We decline to issue a response to the supplementary statement presented by the state since to do so would be to issue an advisory opinion. Neither of the parties to this litigation has standing to request an advisory opinion. *See* R.I. Const. art. X, sec. 3.

### IV

### Authority of the Superior Court to Confine Petitioner to the Training School

■ The petitioner raises an additional issue in respect to the holding by the Superior Court that it lacked the authority to confine petitioner at the training school while awaiting trial on the Superior Court indictment.

We are of the opinion that the Superior Court committed no error in holding that it had no authority to order that petitioner be confined in the training school pending his trial.

On May 26, 1989, the grand jury returned an indictment against petitioner for first-degree murder and robbery. On May 27, 1989, a bail hearing was held in the District Court, and Joseph was ordered held without bail. This means that in accordance with the constitutional requirement the District Court had determined that the proof of guilt was evident and the presumption great in accordance with article I, section 9, of the Rhode Island Constitution. The petitioner argues that the Superior Court had the power to confine him at the training school by virtue of G.L.1956 (1981 Reenactment) § 12–13–9, which authorizes the adult court to commit a juvenile to the State Training School for Youth when the juvenile is unable to make bail after the setting thereof. He also cites § 12–19–26, as amended by P.L.1989, ch. 133, § 1, which authorizes an adult court to sentence a person under the age of eighteen to the training school after conviction for a term not less than two years or no longer than the period of his minority. Although petitioner concedes that he does not

fall squarely within either statute because bail was not set and he has not been convicted and sentenced, he contends vigorously that we should fill in the interstices to provide in the present circumstances for his detention in the training school at the discretion of the Superior Court. We respectfully disagree.

A juvenile offender in respect to whom bail has been set, or who has been adjudicated guilty of an offense in respect to which a sentence no longer than his minority is appropriate, does not fit into the same category as a juvenile offender who is held without bail on an offense serious enough to meet the constitutional requirements of art. I, sec. 9. Such a person has not been deemed by the Legislature to be suitable for incarceration in the training school for youth. We are not inclined by interpretation to amend the statute, interstitially or otherwise, to bring about such a result. One may be held without bail only for the most serious offenses when the proof of guilt is evident or the presumption great. To allow such a person to be confined in a juvenile detention facility would require a specific mandate from the General Assembly, not one that could be construed only by a strained interpretation.

For the reasons stated, the appeal claimed by Joseph is denied and dismissed. His petitions for certiorari are denied. The writs heretofore issued are quashed. The papers in the case may be remanded to the Superior Court for further proceedings with our decision endorsed thereon.