𝔎𝔦𝔠𝔥𝔪𝔬𝔫𝔡

WILLIAM JOSEPH GAZALE

v.

SOLANGE ULCKAR GAZALE
(NOW SOLANGE ULCKAR HEDBERG)

January 12, 1979.

Record No. 770493.

Present: Carrico, Harrison, Cochran, Harman, Poff and Compton, JJ.

*William J. LoPorto* for appellant.

*Burke F. McCahill (Quinlan H. Hancock*, on brief), for appellee.

POFF, J., delivered the opinion of the Court.

This appeal raises the latest in a series of questions concerning the jurisdiction of the courts to order child support payments beyond the child's 18th birthday.

In a property settlement contract executed January 10, 1972, William Gazale (William) and Solange Gazale (Solange), his wife, agreed that Solange would have custody of their minor children, the youngest of whom, Pamela, was born June 18, 1962, and that William would make child support payments of "$267 per month per child . . . until such time as each child shall attain the age of 21 years, become[s] married, self-supporting or otherwise emancipated." The contract further required William to pay the costs of certain other designated needs of the children.

Effective July 1, 1972, the General Assembly reduced the age of majority from 21 to 18 years. Code § 1-13.42.

By decree entered September 25, 1972, Solange was granted a final divorce. The decree affirmed, ratified, and incorporated the terms of the property settlement contract.

On November 29, 1973, the chancellor entered a consent decree awarding William custody of Pamela and reducing the total monthly child support payments by $267 "until the further Order of this Court."

By another order entered December 17, 1976, the custody of Pamela was restored to Solange, and the monthly payment required by the contract for her support was reinstated for the same period fixed in the contract.

Appealing from this order, William contends that the consent decree supplanted the terms of the property settlement contract providing monthly support payments for Pamela and "deprived the Court of jurisdiction to order support beyond age 18."

We have decided four appeals questioning the effect of the statutory reduction in the age of majority upon child support orders.

In *Paul* v. *Paul*, 214 Va. 651, 203 S.E.2d 123 (1974), the parties executed a separation agreement which obligated the husband to make child support payments until the children became 21 years of age or "otherwise emancipated", and this contract was incorporated into the divorce decree entered in September, 1970. New statutes are usually presumed to operate prospectively only, Code § 1-16, and contractual rights and duties are controlled by the law in effect at the time the contract was executed. Applying these rules and considering several provisions of the contract reflecting the parties' intent to provide for the children not only before but also after they attained their majority, we held that the parties never meant the term "otherwise emancipated" to include emancipation resulting from a subsequent change in the law.

Next, we decided *Eaton* v. *Eaton*, 215 Va. 824, 213 S.E.2d 789 (1975). There, a separation agreement executed by the parties required the husband to make monthly payments of $300 for support of a son until he reached age 21. Unlike the *Paul* contract, the *Eaton* contract was never incorporated in the divorce decree. That decree, entered in March, 1972, ordered the husband to make monthly payments of $200. Following the statutory reduction in the age of majority, the court entered another order reducing the amount to $125. Later, after the child attained age 18, the court relieved the husband of any further support obligation, and the wife appealed. Noting that the court's authority to order child support payments was limited to "minor children", we held that the court lacked jurisdiction to order child support payments for a child older than 18. We distinguished *Paul* on two grounds. First,

since the challenged order in *Eaton* was entered subsequent to enactment of the statute changing the age of majority, the question of retroactivity raised in *Paul* was not involved. Second, while in *Paul*, "there were no subsequent support orders supplanting the contract provisions", which had been incorporated in the divorce decree, 215 Va. at 827, 213 S.E.2d at 791, in *Eaton* the contract provisions pertaining to child support were "supplanted by subsequent court orders in the divorce suit dealing specifically with that subject." *Id.*

In *Meredith* v. *Meredith*, 216 Va. 636, 222 S.E.2d 511 (1976), the 1970 divorce decree incorporated a contract requiring the father to support the child "until such child shall reach his majority." 216 Va. at 637, 222 S.E.2d at 511. Construing the intent of that language, and citing cases from other jurisdictions holding that majority or minority is merely a status and not a vested right, a status the contracting parties were charged with knowing was subject to change by the legislature, we held that the parties intended the term of support duty to be no longer than the period imposed by Virginia law, and therefore, that the father was relieved of his obligation when the child reached the new age of majority fixed by the statute.

We dealt most recently with the issue in *Mack* v. *Mack*, 217 Va. 534, 229 S.E.2d 895 (1976). In *Mack*, the 1961 divorce decree incorporated a contract requiring the father to pay $300 a month for the joint support of two "minor children". When the elder child reached 21 in 1971, the trial court "applied the agreement" and ordered the husband to pay $225 a month for the support of the younger child. Later, following the statutory change in the age of majority, the court ordered the husband to continue support payments until the younger child reached 21. Reversing that order, we held, as in *Meredith*, that the contracting parties intended that the husband's duty to support the "minor" children would terminate upon their attaining whatever age of majority might be fixed by statute.

The thread of decision running through these four cases had two strands. We decided first whether the parties' contractual intent was applicable and, if so, we construed the provisions of the contract to determine that intent. Where, as in *Eaton*, the child support provisions of the contract were *supplanted* by subsequent court orders, contractual intent was inapplicable; otherwise, it was controlling. Moreover, as in *Mack*, when the contract is incorporated in the divorce decree, a subsequent order revising the

amount of the monthly payment does not necessarily "supplant" the contract provisions regarding child support.

■ Pursuing the same thread of decision, we consider the threshold question whether the consent decree supplanted the child support provisions of the Gazale contract. We think not. The contractual obligation to make monthly cash payments was only one of several provisions dealing with child support. William was also required to pay the children's medical and dental expenses until each reached the age of 21; to finance a four-year college education for each child, including the eldest daughter who had already passed the age of 21 when the contract was signed; to continue the $267 monthly payments during college summer vacations; and to establish an insurance trust for the support of his wife and children.

While a consent decree is a court order, it is " 'contractual in its nature and should be construed as though it were a contract.' " *Culpeper Nat'l Bank* v. *Morris*, 168 Va. 379, 385, 191 S.E. 764, 767 (1937), quoting 3 Freeman, Judgments § 1350 (5th ed. 1925). Of the several contractual provisions touching child support, the consent decree affected only the monthly obligation. Applying the law of contracts, we conclude that the consent decree served only to amend, rather than supplant, the contractual provisions, *see* 17 Am.Jur.2d Contracts § 459 (1964), and that the parties' contractual intent is, therefore, the controlling factor.

■ Having made that determination, we must now construe the contract to determine contractual intent. Manifestly, the contracting parties intended William's monthly payments for Pamela to be conditioned upon Solange's custody of Pamela, a fact tacitly recognized by the terms of the consent decree which suspended those payments when custody was awarded to William. Moreover, the contracting parties did not limit the term of the monthly support obligation to the period of the children's minority, as in *Meredith* and *Mack*, but to the period preceding age 21, as in *Paul.* Again, as in *Paul* and unlike *Meredith* or *Mack*, the Gazale contract contained several support provisions other than that for monthly cash payments which evince the parties' intent to provide for the children both before and after they attained their majority.

We hold, therefore, that the consent decree did not supplant the contract and that the contracting parties intended that, so long as Pamela was in Solange's custody, William's monthly support

obligation should continue until Pamela reached 21 or until one of the other contingencies stated in the contract occurred. The order below effectuates that intent, and the order will be affirmed.

*Affirmed.*