Patricia A. LIPPMAN

v.

Robert G. KAY.

No. 78–208–Appeal.

Supreme Court of Rhode Island.

June 6, 1980.

J. Ronald Fishbein, Providence, for plain-tiff-appellee.

Edwards & Angell, Jerry L. McIntyre, Providence, for defendant-appellant.

## OPINION

WEISBERGER, Justice.

This is an appeal from a summary judg-ment entered in the Superior Court in an action in the nature of debt on judgment instituted by the appellee, Patricia A. Lippman (Patricia), against the appellant, Robert G. Kay (Robert) to collect child-sup-port arrearages.

Patricia and Robert were divorced in 1970. The final decree entered in the Fami-ly Court ordered Robert to pay $300 per month for support of the couple's three minor children. Robert claims that after making six monthly payments he lost knowledge of Patricia's whereabouts and was unable to make further payments. Pa-tricia instituted a Family Court action on January 13, 1977, to have Robert held in contempt and to order execution in the amount of the accumulated arrearages, which Patricia calculated at $33,282 includ-ing interest. Counsel for Robert entered an appearance and filed a motion to modify the decree. On April 18, 1977, Patricia commenced the present action in the Supe-rior Court for the Counties of Providence and Bristol pursuant to G.L.1956 (1969 Re-enactment) § 15–5–16,[1] claiming arrearages of $33,282 and demanding judgment for $40,000. Hearing on the Family Court mo-tions was continued to June 3, 1977, on which date Robert moved in the Superior Court that the action be abated or stayed

---

1. General Laws 1956 (1969 Reenactment) § 15–5–16 permits child-support arrearages to be regarded as a judgment for debt and sued upon as such. See Glodis v. Glodis, 115 R.I. 370, 371, 346 A.2d 123, 123 (1975).

The recent amendments to § 15–5–16, P.L. 1979, ch. 279, § 2 and ch. 338, § 1, do not bear upon this controversy.

pending resolution of Patricia's action in the Family Court. The Superior Court justice denied the motion to stay. In the ensuing months counsel for Patricia apparently made no efforts to have the Family Court motions heard. Meanwhile, in the Superior Court, after proceeding with discovery, Patricia moved for summary judgment; and on April 7, 1978, Patricia's motion was granted. Judgment was entered against Robert in the amount of $34,850.

In Rhode Island a party seeking to recover accrued installments for alimony or child support has several methods by which to proceed. The arrearages may be collected through contempt proceedings, by an execution for failure to comply with the decree, or by an action at law in the nature of debt on judgment. *Silva v. Silva*, R.I., 404 A.2d 829, 831–32 (1979); *Shonting v. Shonting*, 118 R.I. 475, 480, 374 A.2d 797, 799 (1977); *Glodis v. Glodis*, 115 R.I. 370, 371, 346 A.2d 123, 123 (1975). That Patricia had the right to decide which of these avenues to take there can be no doubt, *see Pires v. Pires*, 102 R.I. 23, 26, 227 A.2d 477, 479 (1967); but we have never ruled upon the proposition that an aggrieved former spouse in Patricia's position may pursue two of them in parallel actions in different courts. Robert in his appeal contends that she may not.

The principle is generally accepted that when two courts of the same state have concurrent jurisdiction over a claim and the claim is asserted in both courts, the court in which the claim was first asserted has priority of jurisdiction and the second court must defer to it. *Miller v. Court of Common Pleas*, 143 Ohio St. 68, 70, 54 N.E.2d 130, 131–32 (1944); *Autry v. District Court*, 459 P.2d 865, 867 (Okl.1969); 1 Bailey, *The Law of Jurisdiction* 62 (1899). Less clear is the application of this rule when the actions in the two courts are not identical. On the one hand, the priority principle usually applies when the two pending actions, although not technically identical, involve the same parties and subject matter and call for the same relief. *Welsh v. Personnel Board of Pawtucket*, 101 R.I. 187, 191, 221 A.2d 476, 478 (1966); *Blake v. Butler*, 10 R.I. 133, 137 (1872); *State ex rel. Ferger v. Circuit Court*, 227 Ind. 212, 215, 84 N.E.2d 585, 586–87 (1949). On the other hand, when the parties are not identical, *see Boston & Providence Railroad v. New York & New England Railroad*, 12 R.I. 220 (1878), or when the two actions although related seek divergent types of relief, *see Welsh, supra*, it may not be improper for the second court to assume jurisdiction and proceed with the case. *See also Autry v. District Court*, 459 P.2d at 867. As one commentator has explained,

"It is not true that a court, having obtained jurisdiction of the subject-matter of a suit and of parties before it, thereby excludes all other courts from the right to adjudicate upon other matters having a very close connection with those before the first court, and in some instances requiring the decision of exactly the same questions. In examining into the exclusive character of the jurisdiction of such cases, regard must be had to the nature of the remedies, the character of the relief sought, and the identity of the parties in the different suits." 1 Bailey, *supra* at 62.

When the relief sought in the two actions is not the same and the two courts must consider different legal principles in order to resolve the respective disputes between the parties, then the priority principle does not bar the later action. *Stevens v. Stevens*, 390 A.2d 1074, 1077 (Me.1978); *Autry v. District Court*, 459 P.2d at 867; *Shetney v. Shetney*, 49 Wis.2d 26, 37, 181 N.W.2d 516, 521 (1970). Thus we have held that a suit against a city for back wages and an administrative appeal of a job dismissal were sufficiently different from each other that the maintenance of the one action constituted no bar to the maintenance of the other. *Welsh*, 101 R.I. at 191, 221 A.2d at 478.

In connection with the present case, the respective remedies Patricia has invoked are dissimilar. First, the forms of relief that would be available to her through contempt and debt on judgment are readily distinguished. In an action for

arrearages in the nature of debt on judgment, the Superior Court is called upon to recognize and, ultimately, to enforce the legal obligations that arose between the parties as a result of the operation of § 15–5–16 upon the defendant's successive failures to pay installments due under the support order. The subject matter of the action is the monetary obligation owed to the plaintiff and the wrongs to be redressed are those done to the plaintiff, not to the court. Behind the action in the nature of debt lies the sanction of levy and execution on the defendant's property. A contempt order, on the other hand, relates to the power of the Family Court to vindicate the authority of its decrees by coercing a respondent into obedience thereto. Unlike debt, contempt can be punished by imprisonment or fine, although it is preferred that the respondent will purge himself of contempt and avoid these sanctions.

■■■ As a second matter, the legal issues that would arise in the respective actions are different. For example, the respondent in a contempt proceeding may properly call the willfulness of his actions into question, and his inability to make the payments ordered may be an appropriate defense. *See Brown v. Brown*, 114 R.I. 117, 120, 329 A.2d 200, 201 (1974). Inability to pay, by contrast, is not properly before the court in an action for debt, although certain other defenses relating to events that arose subsequently to the defaults in issue, such as satisfaction or statute of limitations, may be raised. More fundamentally, although a Family Court judge in the course of deciding a contempt motion may not retroactively alter the fact that overdue payments have ripened into judgments, *Shonting v. Shonting*, 118 R.I. at 479, 374 A.2d at 799, the central question of whether a defaulting party will be adjudged in contempt is generally committed to the discretion of the court. *Brown v. Brown*, 114 R.I. at 120, 329 A.2d at 201; *Tente v. Tente*, 112 R.I. 636, 639, 314 A.2d 149, 151 (1974). Discretion is not similarly lodged in a Superior Court justice who is to determine the merits of an action for arrearages in the nature of debt on judgment.

■■■ In view of these factors we conclude that the nature of Patricia's two actions were sufficiently dissimilar that the Superior Court did not err in refusing to stay its proceedings.

Robert additionally contends that the Superior Court erred in entering summary judgment in Patricia's favor. Although nowhere has Robert denied that he was obligated to pay child support, that he defaulted on a lengthy series of payments, or that the computations utilized in arriving at the judgment figure were correct, and although he pleaded no affirmative defense in answering Patricia's complaint, Robert maintains that he raised triable issues of fact in his affidavit in opposition to the motion for summary judgment and in the answers he filed to certain interrogatories propounded by Patricia.

■■■ We need not belabor the fact that the mere recitation of facts sympathetic to Robert's position will not defeat a motion for summary judgment unless they relate to a claim or defense actually maintainable between the parties. Genuine issues of material fact do not arise if the purported issues have no bearing on the outcome of a case. Since Robert did not dispute Patricia's allegations of nonpayment of specified sums of child support, material issues could only arise by way of affirmative defenses to Patricia's prima facie case of debt on judgment. In connection with such defenses, our review of the granting of summary judgment is impeded by Robert's total failure to inform us which defenses he thinks he has raised in his affidavit and answers to interrogatories. The thrust of the factual material put forward in these papers is that Robert lost knowledge of the whereabouts of Patricia and the children and was unable to regain such knowledge or visit with the children. Robert contends that Patricia failed to comply with the terms of the final decree by concealing her address from Robert and

preventing him from engaging in reasonable visitation.[2]

 The recommended course of action in such a situation is either to make the required payments to the Family Court or to petition that court to modify the decree or suspend payments. *See Ervin v. Ervin*, R.I., 403 A.2d 1088, 1089 (1979). When a party fails to take such steps, each unpaid installment as it accrues becomes in the nature of a judgment, regardless of whether the defaulting party has an understandable grievance against the former spouse. To disturb these judgments retroactively is beyond the power of a court. *Tente v. Tente*, 112 R.I. at 640, 314 A.2d at 151; *Klimasewski v. Klimasewski*, 91 R.I. 308, 310, 162 A.2d 549, 550 (1960). The purported factual disputes with which Robert presents us are thus immaterial to whether summary judgment for debt should have been entered against him, for even if the facts alleged are true, they do not constitute a defense to the action. Since no genuine issues of material fact confronted the Superior Court, its entry of summary judgment for Patricia was correct.

For the reasons stated, the appeal is denied and dismissed, the judgment appealed from is affirmed, and the case is remitted to the Superior Court.

MURRAY, J., did not participate.

---

**2.** The final decree of divorce did not condition the child-support payment obligation on Patricia's compliance with the visitation provision of the decree. *Compare Tente v. Tente*, 112 R.I. 636, 640, 314 A.2d 149, 151 (1974) (unconditional requirement to support) *with Weinbaum v. Weinbaum*, 153 A. 303, 304 (R.I.1931) (conditional requirement).