**CRANSTON TEACHERS ASSOCIATION**

v.

**SCHOOL COMMITTEE OF the CITY OF CRANSTON.**

**No. 78–111–Appeal.**

Supreme Court of Rhode Island.

July 8, 1980.

Natale L. Urso, Thomas J. Liguori, Jr., Westerly, for appellant.

Vincent J. Piccirilli, Providence, for appellee.

## OPINION

MURRAY, Justice.

The Cranston Teachers Association (the association) appeals from an order of the Superior Court which denied its motions to adjudge the School Committee of Cranston (the committee) in contempt of a Superior Court judgment entered in conformity with a judicially confirmed arbitration award.

An arbitrator's decision filed on June 10, 1976, reveals that the original dispute in this case arose in November 1975. At that time, several teachers at the Park View Junior High School filed a grievance claiming that the school administration was violating certain provisions of a collective-bargaining agreement between the association and the committee in effect from September 1, 1975, to August 31, 1977. Essentially, the grievance alleged that the administration failed to hire available, qualified substitutes to cover for absent teachers as required by the agreement and instead directed regularly assigned teachers to substitute for absent colleagues during their unassigned periods in violation of the contract. Contributing to the dispute over implementation of the agreement was the parties' disagreement on the meaning of "qualified substitute teacher." Teachers at other schools filed grievances of a similar nature in the months following.

The grievances centered on the meaning and implementation of the following provisions in the contract:

"ARTICLE VIII

" *   *   *

"F. For secondary school teachers the normal school day will include:
　1. five class periods.
　2. one unassigned period, and
　3. one administration period.

The primary purpose of the unassigned period is class preparation and a teacher will spend either this period or at least an equivalent amount of time outside the school day on class preparation.

" *   *   *

"G. When a regularly assigned teacher is absent, other regularly assigned teachers shall not be assigned to cover classes of absent teachers unless qualified substitute teachers are not available. Teachers shall not be required to cover more than one class at a time for the entire school day, but this shall not be construed to affect the teaching of classes which include pupils from more than one grade.

"H. 1. Secondary teachers may be required to devote up to but not more than fifteen (15) unassigned periods during the school year to student supervision periods.

" *   *   *

"I. Except when flexible scheduling arrangements are in effect, academic subject area junior and senior high school teachers will not be assigned more than seven full periods per day, consisting normally of one. unassigned period, not more than five teaching periods, and one administrative period (which may be used for teaching when an emergency situation requires it), in addition to homeroom or activity duty. Department heads will be provided with adequate time to perform their supervisory duties within said seven periods limitation without being deprived of their daily unassigned period, subject to Section A. The fact that unassigned periods are of unequal duration shall not be grounds for grievance. Regardless of scheduling arrangements, academic subject area teachers shall be entitled to an average of 45 minutes of unassigned time per day, subject to Section A." [Section A prescribes that the official length of a secondary school teacher's work day shall not exceed six hours and fifty minutes.]

Apparently after failing to reach an informal solution, the association and the committee decided pursuant to the contract

to submit the dispute to an arbitrator. The arbitrator's decision indicates that although the parties agreed to present evidence at the arbitration hearing "related solely to the events at the Park View Junior High School," they agreed also that "other subsequent grievances related to the same issue would be joined with the Park View grievance and the parties bound by the award in this arbitration." The following issue was submitted to the arbitrator:

"Did the School Committee violate Article VI, Section A, and Article VIII, Sections F and G, in assigning regular teachers to cover for absent teachers when substitutes were available?"

A hearing was held on May 12, 1976; and on June 10, 1976, the arbitrator rendered his decision containing the following award:

"To the extent that any teacher was accorded less than one unassigned period per day for preparation as under Article VIII, Section F(1) and Section I because of assignment as a substitute for an absent teacher, the School Committee violated Article VIII, Sections F and I of the Agreement. The State Department of Education formula for determining a 'qualified substitute' should be used in implementing the Agreement, in the absence of a definition agreed upon by the parties. In the absence of agreement on a definition of 'qualified substitute' there was no violation of Article VIII, Section G. With respect to single period absences, as for chairman meetings, activity periods, field trips, internal coverage should be possible, utilizing unassigned periods available in excess of the one period per day guaranteed as preparation time. The School Committee should cease any implementation of the agreement contrary to this award, but no money compensation is ordered."

The association applied on August 12, 1976, to the Superior Court pursuant to G.L. 1956 (1979 Reenactment) § 28–9–17 for an order confirming the arbitrator's award. On September 20, 1976, the Superior Court entered a confirmatory order and under authority of § 28–9–22 entered a judgment that incorporated the award verbatim.

The proceedings leading directly to this appeal commenced on November 20, 1976, when the association moved the Superior Court to adjudge the committee in contempt of that judgment. In its motion, the association alleged that the committee "has refused to honor the Judgment of this court in that it has accorded less than one unassigned period per day for preparation to teachers in contravention of the Judgment and continues to implement the agreement of the parties contrary to the arbitrator's award." On August 31, 1977, the association filed a second contempt motion alleging that since December 8, 1976, the committee had similarly failed to comply with the judgment entered on September 20, 1976.

The motions were tried before a justice of the Superior Court. Prior to the admission of evidence, the committee moved to dismiss the association's contempt motions, claiming that the association should have submitted its contentions to arbitration. The court reserved decision on the committee's motion pending the filing of memoranda and proceeded to hear the evidence. In its subsequent memorandum, the committee maintained that the confirmed arbitration award was merely a declaration of principle which could not be accorded injunctive effect. The committee contended also that a "new grievance in arbitration must be submitted for subsequent cases involving the same issue." [1]

Following conclusion of the trial and submission of memoranda, the trial justice rendered a bench decision in which he denied the association's motions to have the committee adjudged in contempt. In that decision he effectively granted the committee's pretrial motion to dismiss when he ruled that

"[a] general statement of principle in an arbitrator's award confirmed by judgment is not one on which contempt might lie. Contempt certainly would lie in a

1. In view of our disposition of this case, we do not address the soundness of this contention.

specific award confirmed by judgment regarding back pay or the appointment to a position or certification. Some specific order of an arbitrator confirmed by court judgment, certainly it would give rise to an action either for contempt or mandatory injunction or whatever. But with a general statement of principle or interpretation of contract such as this was, in this Court's opinion subsequent violations or alleged violations must follow the grievance path."

The association appeals from the final order of the Superior Court, contending that the trial justice erred in ruling that the arbitrator's award confirmed by judgment on September 20, 1976, was not enforceable in contempt proceedings. Consistent with that court's determination, the association concedes that the arbitrator "interpret[ed] sections of the collective bargaining contract and declare[d] certain interpretations were violations of the agreement." In claiming that the judgment nevertheless constitutes an injunction enforceable through contempt, the association points to the introductory clause in the last sentence of the award which was incorporated in the judgment: "The School Committee should cease any implementation of the agreement contrary to the award * * *."

■ Initially, we observe that a judgment entered in conformity with an order confirming an arbitrator's award "has the same force and effect, in all respects as, and is subject to all the provisions of law relating to a judgment in an action * * *." Section 28–9–24. A contempt motion is therefore an appropriate means by which a party may seek another's compliance with a judgment conforming to a confirmed arbitration award. See Milano v. Hingham Sportswear Co., Inc., 366 Mass. 376, 378, 318 N.E.2d 827, 828 (1974). Here the association asserted that the September 20, 1976 judgment had the force and effect of an injunction and requested the Superior Court to enforce it through its contempt powers. In determining that judgment's force and effect, in accord with § 28–9–24, we apply the law of contempt as if the judgment were rendered in an injunctive proceeding.

■ To be enforceable, an injunction must inform those against whom it is directed what is expected of them in clear, certain, and specific terms so that they need not resort to inferences to ascertain their duties thereunder. State v. Eckert, R.I., 389 A.2d 1234, 1238 (1978); School Committee of Pawtucket v. Pawtucket Teachers' Alliance, Local No. 930, 117 R.I. 203, 209, 365 A.2d 499, 503 (1976); Sunbeam Corporation v. Ross-Simons, Inc., 86 R.I. 189, 194, 134 A.2d 160, 162 (1957). The injunctive order should be so clear and unequivocal that the person to whom it is directed may readily know what he is required to do. Id. at 195, 134 A.2d at 163. Superior Court Rule of Civil Procedure 65(d) subserves these objectives by requiring that "[e]very order granting an injunction * * * shall be specific in terms; [and] shall describe in reasonable detail the act or acts sought to be restrained * * *."

The language cited by the association as injunctive is part of a sentence which states simply that "[t]he School Committee should cease any implementation of the agreement contrary to this award, but no money compensation is rendered." Although no additional language delineates the acts proscribed, an earlier part of the award declares that under certain circumstances the committee had violated the agreement. Relying on the declaratory portion in conjunction with the purportedly decretal clause, the association argues that the verbatim judgment is sufficient to hold the committee subject to contempt. In support, the association points to a finding in the trial justice's decision that some teachers "were not given unassigned periods each day as required by the arbitrator's decision." Such a finding seemingly contradicts the trial justice's ruling that the award was merely declaratory rather than injunctive. We perceive that that finding is not contradictory, however, when the award is viewed as a precedential interpretation of the contract. As precedent, the award may "require" certain courses of action to avoid future contractual violations. The issue

left is whether the award incorporated in a judgment mandated certain actions under the pain of contempt.

■ Nowhere does the judgment of September 20, 1976, include a clear mandate proscribing the committee from engaging in certain specified acts. As such, that judgment under which the association moved to have the committee adjudged in contempt did not comply with the requirements pertaining to the form of injunctions prescribed by Super.R.Civ.P. 65(d). Under our prior rulings, *e. g.*, *State v. Eckert* and *Sunbeam Corporation v. Ross-Simons, Inc.*, both *supra*, the acts proscribed could not be left to inferences drawn by the committee from the declaration of a violation preceding the arguably injunctive language. Rather, an injunction must be so clear and unequivocal that the person to whom it is directed may readily know what he is required to do. *Sunbeam Corporation v. Ross-Simons, Inc., supra.* We therefore hold that the judgment was unenforceable in contempt proceedings.

The association's appeal is accordingly denied and dismissed; the trial court's order denying the association's motions to adjudge the committee in contempt is affirmed.

DORIS, J., did not participate.