Alva Retta TRAHAN et al.

v.

Raymond TRAHAN et al.

Nos. 79–402–Appeal, 80–251–Appeal.

Supreme Court of Rhode Island.

Feb. 2, 1983.

Higgins, Cavanagh & Cooney, John T. Walsh, Jr., Albert R. Romano, Providence, for plaintiffs.

Edward John Mulligan, Warwick, for defendants.

## OPINION

WEISBERGER, Justice.

These two cases have been consolidated on appeal and involve a dispute arising from the sale of a business. In the original civil action, No. 69–4792, a judgment was entered finding the defendants in contempt of court for failing to make payments allegedly due under a consent judgment. In the second action, No. 77–389, a trial justice entered a judgment wherein he declined to issue a decision on the merits because he found that the issues involved were identical to those in the contempt action. We affirm both judgments.

In 1964, plaintiffs Joseph and Alva Trahan, husband and wife, entered into a business arrangement with defendants, Raymond and Jane Trahan, also husband and wife. The terms of the agreement provided that plaintiffs were to advance a sum of money to defendants, enabling the latter to establish a rental business consisting of chemical toilets called Sani-Kans. In return, plaintiffs were to receive certain payments and a guarantee that the business would be conducted in a specific manner. A dispute arose between the parties, and on November 28, 1969, Joseph and Alva filed a complaint in the Superior Court alleging (1) that they were not receiving the payments to which they were entitled under the agreement and (2) that defendants were not operating the business in the manner required by the contract.

On February 29, 1972, after conferring with a Superior Court justice, the parties consented to the entry of a judgment which provided, *inter alia*, that plaintiffs would convey their share of the business to defendants in return for certain payments and guarantees concerning the operation of the business. The consent judgment provided in pertinent part that

"[t]he defendants will pay to the plaintiff, Joseph Trahan, the sum of $3,500 within thirty days and will pay to the said Joseph Trahan three (3%) per cent of the gross cash receipts of the Sani-Kan Company for fourteen (14) years, payable monthly, the first payment to be due during the month of April, 1973. The defendants will further pay to the plaintiff, Alva Retta Trahan, two and one-half (2½%) per cent of the gross cash receipts of the Sani-Kan Company for a period of fifteen (15) years, said payments to be made monthly."

Upon the death of Joseph Trahan in June of 1974, defendants, after consulting an attorney, ceased making payments to Joseph Trahan or to his estate but continued making payments to Alva Trahan. Therefore, when the payments allegedly due Joseph Trahan or his estate were not forthcoming,

on January 20, 1976 Alva Trahan filed a motion to substitute herself as claimant under the consent judgment in her capacity as executrix of Joseph Trahan's will. However, before any action was taken thereon, she filed a subsequent motion on May 13, 1976, requesting that defendants be found in contempt of the final judgment dated February 29, 1972. On October 29, 1976, after a hearing, an order was entered declaring that the actions taken by plaintiff Alva Trahan were procedurally incorrect since a final judgment had already been entered.

Thereafter, plaintiff filed a second action in the Superior Court on February 10, 1977. Her complaint alleged that payments which were due under the 1972 consent judgment to Joseph Trahan's estate had not been made, and it asserted that the business was not being conducted in accordance with the consent judgment. Therefore, plaintiff requested, *inter alia,* that defendants be adjudged in contempt of the consent judgment, that they be enjoined from further violations of the decree, and that money damages be awarded. The defendants in that action, Raymond Trahan, Jane Trahan, and Edward Partridge, filed their answer to the complaint on April 10, 1977.[1] They requested declaratory relief, asking for a determination of their rights and duties concerning the alleged overdue payments and other provisions of the consent judgment. While discovery was proceeding in this latter case, Alva Trahan again began action in the former case.

Thus, on December 14, 1978, Alva Trahan filed a second motion to substitute herself "both individually and in her capacity as Administratrix C.T.A. of the Will of Joseph Trahan" in the prior Superior Court action. The same day plaintiff filed a motion to add Edward Partridge as a party defendant in the original action. Over defendants' objections to these motions, a Superior Court justice entered orders on January 16, 1979, granting plaintiff's motion to substitute herself for her deceased husband in the original action and to add Mr. Partridge as a party defendant.[2] On May 2, 1979, plaintiff filed a subsequent motion to substitute herself and R. Ronald Sinclair as parties plaintiff in their capacities as cotrustees under Joseph Trahan's will.

Hearings were held on April 9, 1979 and June 8, 1979, regarding plaintiff's contempt motion and the motion to substitute. After hearing testimony,[3] the trial justice stated that the issue posed by defendants was whether or not they were obliged under the decree of 1972 to continue the payments after Joseph Trahan's death. After quoting the pertinent language from the decree, the trial justice held that although the decree did not specifically refer to Mr. Trahan's successors or to his estate, he interpreted the language to mean that

> "the payments * * * are to continue whether Mr. Joseph Trahan is living or dead. No one can predict how long anyone is going to live and when a provision is in a decree for the payment of money for a certain period of time, the [c]ourt will determine that to mean the payments have to be made for that period of time, whether the person to whom the

---

1. Edward Partridge bought the Sani-Kan business from defendants in April 1976.

2. Mr. Partridge conceded that when he purchased the business, he was aware of the 1972 consent judgment and of the fact that if the claim of Joseph Trahan's estate was valid, the business he was purchasing would be liable for those payments. Since Partridge admitted he had actual notice of the consent judgment and since he was legally identified with the other defendants, he could have been held in contempt for any violation of the consent judgment. *See United States v. McAndrew,* 480

F.Supp. 1189, 1194 (E.D.Va.1979); *Cf.* Super R.Civ.P. 65(d) (injunctions and restraining orders binding upon individuals who receive actual notice of order and who are in active concert or participation with parties to action).

3. At one point defendants' attorney sought to introduce proof of the parties' supposed intention underlying the contested provision of the judgment. The Superior Court justice declined to allow such proof, noting that the judgment "was entered by consent. * * * We're not going to go behind the decree."

payments are to be made survives or not."

The trial justice, having decided that payments were required, next considered the issue of whether plaintiffs had a right to enforce the making of those payments. He held that Alva Trahan and Mr. Sinclair, who had been named cotrustees of a testamentary trust established by Joseph Trahan and designated as residuary legatees of his estate, had the right to enforce the making of such payments. The motion for substitution was granted, and a judgment was entered on August 2, 1979, finding defendants in contempt of the 1972 consent judgment. The defendants were allowed to purge themselves of that contempt by paying plaintiffs the sum of $19,448.17 (the sum found to be due under Joseph Trahan's consent judgment), including interest. The defendants filed their notice of appeal to this court from that judgment on August 15, 1979.[4]

In respect to the later action filed in Superior Court on February 10, 1977, a judgment was entered on January 30, 1980, in which the trial justice declined to issue a decision on the merits because he found that the issues involved were identical to those involved in the contempt proceeding. The defendants filed a notice of appeal to this court from that judgment on February 8, 1980.

■ In respect to the contested provision in the consent judgment, defendants contend that it did not require payments to Joseph Trahan's estate after his death. We disagree. Although a consent judgment receives a court's imprimatur, the judgment is in essence a contract between the parties to the litigation from which it is derived. Such a judgment is to be construed as a contract using the rules of construction applicable thereto. *Gazale v. Gazale,* 219 Va. 775, 779, 250 S.E.2d 365, 367 (1979); *see United States v. American Society of Civil Engineers,* 446 F.Supp. 803, 808 n. 14 (S.D.

N.Y.1977). Generally courts have held that parties to a contract, except in the case of personal service contracts, are presumed to have intended to bind not only themselves but also their estates or personal representatives. *See, e.g., United States ex rel. Wilhelm v. Chain,* 300 U.S. 31, 35, 57 S.Ct. 394, 396, 81 L.Ed. 487, 490 (1937) (quoting 1 Chitty *Law of Contracts* § 138 (11th American Ed. 1874)); *Burka v. Patrick,* 34 Md. App. 181, 185–87, 366 A.2d 1070, 1072–74 (1976); *Flicker v. Chenitz,* 55 N.J.Super. 273, 279–80, 150 A.2d 688, 692 (1959).

Furthermore, in light of the fact that defendants were represented by counsel when the judgment was entered, participated in the negotiating process leading up to the judgment, and consented to the language chosen by the parties to be implemented in the judgment, it is only proper to conclude that defendants should be charged with understanding the clear legal import of the provision concerning payments to Joseph Trahan. *Cf. United States v. Schafer,* 600 F.2d 1251, 1253 (9th Cir.1979) (a defendant who negotiated for the decree, and consented to its entry but took no steps to modify the decree, was in no position to object to it or to rely on the vagueness of its language as a defense); *United States v. McAndrew,* 480 F.Supp. 1189, 1192–93 (E.D. Va.1979) (when the language of a consent decree was chosen by the parties and a disputed term had specific legal meaning, the defendants may be charged with understanding the legal import of the term). Moreover, defendants have ignored the fact that the judgment specifically and unconditionally ordered the payment to continue for fourteen years, and nowhere authorized defendants to cease payments for any reason. As stated by this court in *Menard v. Woonsocket Teachers Guild,* 117 R.I. 121, 129, 363 A.2d 1349, 1354 (1976), "[i]t has long been recognized that the propriety of a mandate contained in an [unappealed] order [entered] by a court having competent jur-

---

**4.** Following that appeal plaintiffs filed a motion in Superior Court requesting that they be permitted to attach defendants' real estate. That motion was denied in an order on September 24, 1979.

isdiction cannot be questioned. *E.g. Starkweather v. Williams,* 31 R.I. 134, 135, 76 A. 662, 663 (1910). Rather, the order must be complied with until it has been modified or dissolved." Therefore, if defendants questioned the application of the consent judgment, their proper redress was to seek judicial construction or modification of the judgment, not unilaterally to disregard it. *Cf. United States ex rel. Shell Oil Co. v. Barco Corp.,* 430 F.2d 998, 1002 n. 8 (8th Cir.1970) (even if consent decree is subject to collateral attack, contemptuous conduct is inexcusable). In choosing the latter alternative, defendants acted at their peril. Consequently, the Superior Court justice properly determined, as a matter of contract construction, that the language of the judgment required that payments continue to the legal representatives of Joseph Trahan after his death until the conclusion of the period stipulated therein.

In respect to the question of whether the trial justice properly invoked contempt sanctions to enforce compliance with the consent decree, we believe that he did. A civil contempt proceeding is an appropriate vehicle to enforce compliance with court orders and decrees when attempting to preserve and enforce the rights of parties litigant.[5] *See Palmigiano v. Garrahy,* 448 F.Supp. 659, 670 (D.R.I.1978); *Town of Lincoln v. Cournoyer,* 110 R.I. 101, 105, 290 A.2d 600, 602 (1972); *Starkweather v. Williams,* 31 R.I. 134, 76 A. 662 (1910). Civil contempt in such a case is established when it is proved by clear and convincing evidence that a lawful decree was violated. *Palmigiano v. Garrahy,* 448 F.Supp. at 670; see *State v. Eckert,* 120 R.I. 560, 570, 389 A.2d 1234, 1240 (1978) (there must be clear proof of a violation of an injunction in order to adjudge a person in contempt of the decree embodying the injunction). Willfulness need not be shown as an element of civil contempt. *McComb v. Jacksonville Paper Co.,* 336 U.S. 187, 191, 69 S.Ct. 497, 499, 93 L.Ed. 599, 604 (1949).

When a trial court seeks to enforce a judgment through its contempt powers, this court, in reviewing that action, applies the law of contempt as if the judgment or decree had been rendered in an injunctive proceeding. *See Cranston Teachers Ass'n v. School Committee of Cranston,* R.I., 416 A.2d 1180, 1183 (1980). Injunctions, to be enforceable, must inform those persons against whom they are directed of what is expected of them in clear, certain, and specific terms so that they can ascertain their duties thereunder. *Id.* 416 A.2d at 1183; *State v. Eckert,* 120 R.I. at 567, 389 A.2d at 1238. Thus, since the language of the consent judgment was clear and since he found that defendants should be charged with understanding the clear legal import of the provision concerning payments to Joseph Trahan, the trial justice properly invoked contempt sanctions to enforce compliance with the consent judgment.

Regarding defendants' argument that interest cannot be awarded in a contempt proceeding, we note that they concede that interest may be allowed as an element of damages in a contract action. Their concession is not without foundation. Over a half century ago, this court in *Pearson v. Ryan,* 42 R.I. 83, 90, 105 A. 513, 515 (1919), adopted the view that interest in contract litigation will be allowed in those instances in which it seems equitable to do so. This general principle was further enunciated in *Corning Glass Works v. Seaboard Surety Co.,* 112 R.I. 241, 249–50, 308 A.2d 813, 818 (1973), wherein we held that interest in an action for a breach of contract should be allowed even in respect to claims that are unliquidated when it would seem equitable and just in making the injured party whole. *See 5 Corbin on Contracts §§* 1048–49 (1964). In determining a

---

**5.** Criminal contempt proceedings may also be used where appropriate to punish a party for his or her noncompliance with a consent decree. *See, e.g., United States v. Schafer,* 600 F.2d 1251, 1253 (9th Cir.1979); *United States v. McAndrew,* 480 F.Supp. 1189, 1194 (E.D.Va. 1979).

reasonable amount of interest .to be assessed, the court looks to statutory authority for guidance. *See* G.L.1956 (1969 Reenactment) § 9–21–10, as amended by P.L. 1981, ch. 54, § 1. Furthermore, defendants cite no authority for the proposition that a party to a consent judgment cannot be ordered to comply with the judgment through a contempt order that requires payment of amounts due under the terms of the judgment, including interest. In fact, the majority rule is that the amount of a fine imposed in a contempt proceeding may be the actual damage sustained by the injured party. *See School Committee of Pawtucket v. Pawtucket Teachers Alliance,* 101 R.I. 243, 254–55, 221 A.2d 806, 813–14 (1966) (quoting *United States v. United Mine Workers of America,* 330 U.S. 258, 303–04, 67 S.Ct. 677, 701, 91 L.Ed. 884, 918 (1947)); *Nelson v. Progressive Realty Corp.,* 81 R.I. 445, 450, 104 A.2d 241, 243 (1954). Therefore, in order to indemnify the aggrieved party, interest may be awarded as part of the fine where necessary to compensate the injured party for waiting for funds to which he was entitled. *See Starkweather v. Williams,* 31 R.I. at 138, 76 A. at 664.

 We find no merit in defendants' argument that plaintiffs have violated the election-of-remedies doctrine by their pursuit in different actions of debt on judgment and contempt proceedings to compel the making of the contested payments. This court has consistently held that in order to collect a money judgment a person may pursue distinct remedies simultaneously. *See, e.g., Lippman v. Kay,* R.I., 415 A.2d 738, 741–42 (1980); *Silva v. Silva,* R.I., 404 A.2d 829, 831–32 (1979). Such a procedure does not violate the election-of-remedies doctrine. *Id.* 404 A.2d at 832; *see Lippman v. Kay,* 415 A.2d at 741–42.

 Finally, with respect to the defendants' argument that Alva Trahan and Ronald Sinclair were not proper parties to the contempt proceedings, we believe that as Joseph Trahan's residuary legatees in their capacities as trustees they were appropriate parties to enforce the consent judgment and were properly substituted as plaintiffs under Super.R.Civ.P. 25.

For the reasons stated, the defendants' appeal is denied and dismissed, the judgments of the Superior Court are affirmed, and the papers in the case may be remanded to the Superior Court.