CITY OF PROVIDENCE

v.

Robert KALIAN.

No. 86–384–M.P.

Supreme Court of Rhode Island.

June 9, 1988.

Edward C. Clifton, City Sol., for plaintiff.

James T. Murphy, Hanson, Curran & Parks, Providence, for defendant.

## OPINION

FAY, Chief Justice.

This is a petition for certiorari brought to review an order entered by a judge of the District Court, sitting as a Housing Court, that held the defendant, Robert Kalian, in violation of a consent order entered in the District Court directing him to correct certain housing-code violations on or about the premises of four pieces of property he owned in the city of Providence (the city).[1] We affirm the District Court judge's ruling that imposed the monetary sanctions provided in the consent order, thereby ending this protracted matter.

For the past ten years Kalian has had difficulty keeping his properties in compliance with the Providence minimum-housing standards. On numerous occasions the city has cited him for code violations found on his properties at 685 Broad Street, 701 Broad Street, 9 Moore Street, and 11 Moore Street. The city filed complaints against him in Housing Court for the outstanding

1. Pursuant to G.L. 1956 (1985 Reenactment) § 8–8–3(a)(4), the District Court had exclusive jurisdiction to sit as Housing Court.

violations, after Kalian neglected to abate the violations in these properties.[2]

On March 24, 1983, Kalian agreed by consent order to fix the violations at 685 Broad Street. He never complied. On August 23, 1984, the judge consolidated the complaints from 685 and 701 Broad Street and entered another consent order providing that Kalian would abate all outstanding violations at these properties by November 1, 1984, unless he planned to demolish these buildings within a reasonable time according to his proposed reconstruction plan. Kalian had told the court that he hoped to demolish the violative properties and construct a medical building on the land. This consent order gave him the time he needed to obtain approval from the city administration. He indicated that he was having trouble obtaining this approval because of the city's transition from the prior mayoral administration.

After a continuance, on November 29, 1984, the court held Kalian in civil contempt for failing to comply with the order and further ordered that Kalian comply by June 27, 1985, or be fined $500. The transcript does not indicate that a review occurred on June 27, 1985, nor does it indicate that this fine was imposed.

On December 5, 1985, the Housing Court consolidated the Moore Street complaints with the aforementioned complaints, ordering that all the violations be corrected, as indicated in the transcript, by December 19, 1985. The contempt holding remained outstanding and impliedly was incorporated by the consolidation order. Consequently, Kalian remained in contempt for the outstanding violations.

As each court date passed, however, Kalian's plans for redevelopment never came to fruition. Meanwhile he made no effort to restore the exterior of these buildings.

Finally, on December 19, 1985, the judge entered yet another consent agreement that directed Kalian to make the outstanding repairs before June 26, 1986. Specifically, the order provided the following:

"All outstanding violations including those listed in the original complaints and in the notices of violation which issued in August 1985 regarding the properties listed in these cases shall be abated on or before June 26, 1986. Furthermore, a fine of $100.00 (One Hundred Dollars) per day per outstanding violation is imposed upon defendant, Robert Kalian. Said fines are suspended, however, and will be vacated if all aforementioned violations are abated on or before June 26, 1986. For each such violation not then abated, said defendant shall pay said fine of $100.00 per day, per violation then outstanding, running from the date of this order in a cumulative manner * * *. This matter is assigned for review of this order and/or imposition of the aforesaid sanctions 6/26/86."

Pursuant to this order, the Housing Court reviewed Kalian's compliance on June 26, 1986. The judge specified that he wanted to determine whether Kalian violated the order. Several Providence housing inspectors testified on behalf of the city and established that all the violations at 701 Broad Street and 9 Moore Street were abated. They further testified that nine violations remained outstanding at 685 Broad Street and three remained outstanding at 11 Moore Street. They indicated, however, that people were working on 11 Moore Street when last viewed by the inspector. In order to correct the remaining violations, Kalian had to repair and apply protective coating to the exteriors of both 685 Broad Street and 11 Moore Street.[3]

---

2. The city filed the following complaints against Kalian for the properties at issue. On December 14, 1981, the city filed complaint H.C. No. 81–267 citing Kalian for twelve violations at 685 Broad Street. On January 15, 1982, the city filed complaint H.C. No. 82–12 citing Kalian for nine violations at 701 Broad Street. On March 1, 1984, the city filed complaint H.C. No. 84–91 citing Kalian for four violations at 11 Moore Street. On December 13, 1984, the city filed complaint H.C. No. 84–356 citing Kalian for eighteen violations at 9 Moore Street.

3. Protective coating as described in the complaint refers to a building's exterior being properly coated, treated, or sealed so as to protect it from serious deterioration.

Trying to justify his failure to satisfy the consent order, Kalian testified that he was prevented from painting the buildings on schedule because of the rainy weather. The defense elicited testimony from the city's inspectors that the spring of 1986 was wetter than normal. This testimony, however, was contradicted by other testimony indicating that this spring was no more rainy than usual.

Although Kalian indicated the spring rains prevented him from completing the work, he also acknowledged agreeing to the terms of the consent agreement, including the time provision. Furthermore, he testified that he did not commence work on some of these properties until a few days before the deadline. He explained that financial constraints prevented him from hiring four crews of workers to repair the houses simultaneously. During this time, however, Kalian collected rents from the tenants of these buildings.

Kalian testified that in May 1986 he met with Richard Riendeau, the City Solicitor, and with housing inspectors, to discuss his impending inability to comply with the consent agreement. Kalian tried to offer Riendeau's statements from their conversation because Riendeau was on vacation and unable to testify at the trial. Sustaining the city's hearsay objection, the trial judge would not permit Kalian to testify about Riendeau's responses in their conversation. The judge ruled that unless Riendeau's response resulted in an official modification of the order, it was irrelevant. Kalian testified that he never sought a judicial modification of the consent agreement.

Kalian contends that the language of the agreement, as he understood it, did not mandate the imposition of fines for his failure to comply with all the terms of the agreement. He believed that his performance would be reviewed. Furthermore he testified that although the work was incomplete, his crew was working on the properties presently and could be expected to finish both within three to four weeks. Hoping to avoid the sanctions, Kalian also testified that he could not afford to pay

any sanctions imposed and therefore would have to close the houses.

At the close of the trial Kalian requested that the judge view the properties. The judge, however, denied this request, stating that a view was unnecessary and that his decision was purely a matter of law concerning whether Kalian complied with the agreement. The judge noted that although Kalian had completed substantial work on the properties, not all the violations had been abated pursuant to the consent order. He therefore held Kalian in violation of the order and imposed the sanctions agreed to therein. In making this ruling, he noted that the Housing Court had been very lenient with Kalian, yet no more extensions would issue.

The judge refused to give weight to Kalian's excuses, stating that, if diligent, Kalian could have had the houses painted by June 26, despite the weather. He noted that this lack of diligence was confirmed by Kalian's starting the work only shortly before the time provided in the consent order expired. He also stated that Kalian's excuse of limited financial resources would not preclude the imposition of the fines. Additionally he refused to vacate the sanctions even if Kalian abated the remaining violations shortly after the hearing. Consequently the judge ordered that the $245,700 sanction be imposed on the landlord. Prior to the entry of the order on September 4, 1986, however, Kalian abated all the outstanding violations.

In response to this judgment, Kalian filed a motion for reconsideration or relief from the order. After a hearing the motion was denied. Kalian then filed this petition for certiorari and applied for a stay of the trial judge's order. This court granted the stay and later granted the petition for certiorari.

Meanwhile Kalian discovered that the city of Providence had recorded the violations, the complaints, the consent order, and the judgment of civil contempt imposing fines in the City Land Evidence Records. These documents prevented him from refinancing these buildings. Kalian filed a motion with our court seeking to

order the city to remove these instruments from the City Land Evidence Records. He filed the motion with this court because the record of the case was sent to this court on the writ for certiorari and District Court no longer was able to take action on the case. In that motion he argued that the recording of these documents violated the state recording statutes and were adverse to the stay pendente lite. We denied his motion but remanded the records to District Court for a hearing to decide if the documents should be removed. On remand the District Court judge also denied the motion, holding that the District Court had no equity power to grant the requested relief. Kalian renewed his motion to our court, seeking an order to have the records removed. We decided to consider the issue of whether the District Court possessed the equity jurisdiction to render the requested relief along with the issues presented by the certiorari petition. The parties declined filing additional memoranda in support of their positions.

In addition to the issue raised by motion, we shall also address two issues presented by certiorari: whether the judge was correct when he imposed a civil contempt fine for Kalian's failure to comply with the consent order, and whether the District Court, acting as Housing Court, has the jurisdiction to impose a fine exceeding $10,000. We shall consider the two issues presented on certiorari first and the issue presented by motion second.

## I

## IMPOSITION OF SANCTIONS FOR VIOLATING THE CONSENT ORDER

Kalian challenges the imposition of the sanctions provided in the consent order on several grounds. He argues that the judge failed to make the specific finding that he willfully violated the order. He also argues that the judge did not rule that Kalian violated the court order by clear and convincing evidence before imposing the sanctions. We do not agree with Kalian's arguments.

■ First we recognize that Kalian's failure to comply with a consent decree was sufficient to justify the judge's imposition of the fines mandated by the order. As the facts indicate, Kalian had a long history of ignoring both city and Housing Court orders to bring his properties into compliance with the minimum-housing code. In fact the Housing Court had held Kalian in contempt for these violations prior to his entering into the consent order presently at issue.

■ Contrary to Kalian's argument, the trial judge need not make a finding that Kalian willfully neglected to comply with the consent order to impose the contempt sanctions. This court has held that an absence of willfulness does not relieve a party from civil contempt. *Trahan v. Trahan,* 455 A.2d 1307, 1311 (R.I. 1983). Civil contempt is established when it is proven by clear and convincing evidence that a lawful decree was violated. *Id.* On June 26, 1986, the date to review Kalian's compliance with the order, the judge specifically ruled that Kalian violated the terms of the order and he imposed the sanctions.

Positing an argument to mitigate his willfulness, Kalian contests the holding based on the judge's refusal to let him present hearsay testimony describing Kalian's conversation with Riendeau that presumably would have indicated that the city understood Kalian's predicament. The judge correctly noted, however, that this evidence was irrelevant. The only appropriate relief Kalian could have obtained from the order was a modification. *Trahan,* 455 A.2d at 1311. Although Kalian tried to establish an impossibility defense, the judge, after reviewing the facts and history of the case, decided that Kalian did not diligently try to complete the work by the deadline. The judge ruled there was insufficient evidence to establish that the rains prevented him from painting the houses. Our review of the hearing transcript convinces us not only that the judge did not believe Kalian's excuses but that he could have found that Kalian's inaction rose to a level of willfulness.

■ Kalian asserts that the judge erred because he did not make the finding that Kalian violated the order by clear and convincing evidence. Our review of the record, however, indicates that the judge could not have made any other finding. Not only did the city offer evidence that Kalian violated the order but Kalian also testified to the same. There is ample evidence to support the clear and convincing standard.

■ Finally, regarding the contempt order, Kalian argues that the sanctions imposed are inappropriate. He argues that instead of being coercive, this sanction is punitive, hence a criminal contempt penalty. He also equates this sanction with criminal contempt because he is unable to purge the contempt. We do not agree.

The court order, as agreed upon by the parties, was designed to provide Kalian with the necessary incentive to complete the repairs. It generously provided that the daily penalty for outstanding violations would be vacated if the violations were abated by the order's deadline. Conceivably Kalian could have incurred no penalty. This arrangement was far more beneficial to Kalian than an alternative, for example, that could have imposed fines daily until the violations were alleviated. We hold, therefore, that this sanction was coercive by design and not punitive. We find that Kalian presently remains in contempt of the consent order and will purge himself of this contempt by paying the sanction as entered by the Housing Court.[4] *See Trahan,* 455 A.2d at 1312.

II

DISTRICT COURT'S EQUITY JURISDICTION WHEN SITTING AS HOUSING COURT

During the course of this case, questions arose regarding the District Court's equity jurisdiction when it operates as Housing Court. We shall address those questions.

■ Kalian, countering the city's argument that the consent decree should be enforced as a contract, argued that the District Court's jurisdictional limitation of $10,000 precludes the judge from entering a contempt sanction of $245,700. We disagree with this argument.

The District Court has exclusive original jurisdiction of "[a]11 violations of minimum housing." General Laws 1956 (1985 Reenactment) § 8-8-3(a)(4). The District Court is further empowered to exercise equity jurisdiction in furtherance of its jurisdiction under § 8-8-3(a)(4). Section 8-8-3.1. Additionally, the District Court is authorized to punish "any contempt of its authority by fine or imprisonment or both." Section 8-8-5. Therefore, the monetary limitation on the District Court's jurisdiction does not preclude the Housing Court from imposing this contempt sanction. To rule otherwise would substantially curtail the court's power to ensure that parties comply with its orders.

■ Finally, in answer to the motion presented at trial, we rule that after we remanded the record, it was within the District Court's jurisdiction to address the issue of whether the city properly recorded the documents relating to the case in the City Land Evidence Records. The Housing Court necessarily has the power to use its equity jurisdiction to resolve issues arising directly from the court's lawful exercise of its jurisdiction.

The petition for certiorari is denied and dismissed, the writ heretofore granted is quashed, and the record certified to this court is ordered returned to District Court with our decision endorsed thereon.

4. Kalian also argues that the damages, if analyzed according to contract law, are excessive. He argues that the rule of liquidated damages applies. His reliance on a contract theory, however, is misplaced. A consent decree is treated as a contract for the purposes of construing its intent when its meaning is disputed. In situations in which the language of the consent agreement is not disputed, however, it is to be enforced as a judicial decree. *Cf. Trahan v. Trahan,* 455 A.2d 1307, 1310 (R.I.1983) (court limits use of contract law to construe language of the consent decree).