[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
DECISION
In this action, Plaintiff, the Town of Johnston (Town) by its Complaint filed October 9, 1991 containing three counts and an amended Complaint adding a fourth count filed November 19, 1991, seeks to have certain rights declared relative to the siting of new or expanded landfills in the vicinity of the Central Landfill in Johnston, alleging a violation of the provisions of a Consent Order dated June 1, 1989, and R.I.G.L. §§ 23-19-11 and 23-19-34.
Defendants in the action, Louise Durfee, Director, Department of Environmental Management (DEM), and Rhode Island DEM, Jerrold L. Lavine, Chairman, and Thomas E. Wright, Executive Director of the Rhode Island Solid Waste Management Corporation (SWMC), and Rhode Island SWMC, deny that the Town is entitled to the declaratory relief sought, alleging that their respective actions are neither governed by the Consent Order nor inconsistent with or violative of any statutory provision.
The pertinent facts are not in dispute. In the Town of Johnston is located the Central Landfill, a state-subsidized non-hazardous solid waste facility. The defendant, SWMC, is a legislatively created public agency which presently operates the Central Landfill, and which is responsible for the planning and siting of future state facilities. The defendant DEM is the state agency which has regulatory authority over the SWMC.
In April, 1988 the Town brought an action against defendants SWMC and DEM in which the Town sought relief from a DEM administrative order which allowed the SWMC to expand the operation of the Central Landfill in Johnston. As a result of that suit the parties consented to the entry of a judgment entitled the Consent Order (See Appendix). The Consent Order, which was entered on June 1, 1989 states that the parties implemented the Order to "avoid prolonged and complicated litigation . . . and [to] expedite closure of the Central Landfill."
In 1989 legislation was enacted by the Rhode Island General Assembly which established a procedure for the siting of new solid waste facilities. Pursuant thereto, the SWMC conducted a search and identified several possible sites. Three of those sites are within the borders of the Town of Johnston.
On or about October 9, 1991 the Town filed the instant complaint seeking to have certain rights declared pursuant to the provisions of R.I.G.L. Chapter 9-30. Thereafter on or about October 30, 1991, defendants filed a motion to dismiss on the ground that the Town was barred from ultimately obtaining the relief sought. The motion was subsequently withdrawn before the issue was decided, leaving the court to consider the merits of the controversy.
The Town brought its suit relying upon the provisions of R.I.G.L. Section 9-30-2 which provides:
 "9-30-2 Power to construe — Any person interested under a . . . written contract or other writing constituting a contract, or whose rights . . . are affected by a statute . . . may have determined any question of construction. . . arising under the instrument (or) statute . . . and obtain a declaration of rights . . . thereunder."
The court has jurisdiction to hear and consider the Town's request for a declaration of its rights because our Supreme Court stated that a consent judgment "is in essence a contract between the parties to the litigation from which it is derived . . . to be construed as a contract using the rules of construction applicable thereto." Trahan v. Trahan, 455 A.2d 1307, 1310 (R.I. 1983).
Count I of the Town's Complaint seeks to have the Court declare that the siting of any additional landfills in the vicinity of the Central Landfill or an expansion thereof is inconsistent with and therefore violates the Consent Order which was entered as a Judgment by the Court.
In summary, the Consent Order provides as follows: Paragraphs 1 through 8 speak in terms of "the landfill" obviously meaning and intending to refer to the Central Landfill located in the Town of Johnston. Said paragraphs establish in detail the kinds of wastes allowed to be deposited in the landfill and the conditions and outside dates for its closure.
By its provisions, paragraph 9 allows a waste to energy incinerator to remain in the Town after 1996 and provides further:
"Nothing in this consent order, however, precludes the Corporation from using its property for any lawful purpose consistent with this consent order and applicable regulations."
The remaining paragraphs govern, in detail, compensation to the Town; the right of the Corporation to continue the Landfill operation prior to the closure dates; the parties' right to enforce the conditions of the Order; continued acquisition by the Corporation of properties surrounding the Landfill; the right of access by the Town to basically inspect the Landfill and to monitor activities to insure compliance; and the dismissal of the then pending appeal and public nuisance action.
A reading of the entire Order leads the Court to the inescapable conclusion that much thought, discussion, and deliberation went into its formulation. The Court need only allude to the various dates of closure and types of allowable wastes permitted together with the specifics relating to compensation to support that conclusion.
It seems to the court that the Town would be hard pressed to even suggest that it, through its counsel, did not participate in the protracted negotiations leading up to the selection and/or approval of the language employed in the Consent Order. Moreover all of the principals including the Mayor of the Town were signatories to the Order as were counsel for the principals. Paragraph 21 of the Consent Order provides that each signatory certify that he or she was fully authorized to enter into the terms and conditions of the Order and to execute and legally bind each to its provisions. In its decision the court in Trahan,supra explained that where a party is represented by counsel when a judgment is entered, participates in the negotiating process leading up to the judgment and consents to the language chosen by the parties to be implemented in the judgment, it is only proper to conclude that that party should be charged with understanding the legal import of its provisions. It is to be noted also that the intent which this court seeks in interpreting an agreement is not some undisclosed intent that may have existed in the minds of the parties but the intent that is expressed by the language contained in the contract. See, Flanagan v.Kelly's System of New England, Inc., 109 R.I. 388, 286 A.2d 249
(1972).
It is clear and the court finds that the Consent Order refers and is restricted to limiting the operation of the Central Landfill only and that the Order contains neither specific language nor any language from which it may be reasonably inferred that the SWMC is prohibited from siting additional or expanded landfills in the Town.
Counts II and III of the Town's complaint seek to have its rights declared relative to SWMC's reported actions in identifying possible solid waste facility sites within the Town's borders alleging that such actions are in contravention of R.I.G.L. Section 23-19-11(4)(D), requiring consideration for regional size and geographical location for such sites, and Section 23-19-34 which establishes a buffer zone around the Central Landfill.
Section 23-19-11 entitled "Planning Requirements" grants broad planning responsibilities to SWMC authorizing the preparation of a statewide resource recovery system plan indicating location size and type of disposal facility to serve the future needs of the state and its municipalities. Subsection (4)(D) relied upon by the Town provides in pertinent part:
(4) In developing the plan, the corporation (SWMC) will insure that:
. . .
(D) Future solid waste disposal facilities shall be regional in size and emphasize the geographical and political nature of the surrounding area, . . ."
Section 23-19-34 provides in pertinent part:
 § 23-19-34 Central landfill buffer zone. (a) The corporation shall be required to establish a buffer zone surrounding the operational portion of the central landfill, as identified per site master plan No. 06538, and the area licensed for landfilling, hereinafter referred to as the entire operational portion of the central landfill. In order to create the buffer zone, the corporation shall acquire all real property zoned residential as of July 31, 1988 and remains zoned residential as of October 1, 1989 within one thousand feet (1000') of the entire operational portion of the central landfill.
 . . .
 (d) For the purposes of this section, the corporation shall acquire the total acreage and all buildings (if applicable) of any parcel which is encroached upon to any degree by the one thousand foot (1000') mark as measured from the perimeter of the entire operational portion of the central landfill.
 . . ."
The Town alleges, and it is not disputed that the SWMC has identified three (3) possible sites within the borders of the Town. Although not supported by any evidence, it also alleges that the sites are all located on land that is completely or partially part of the Central Landfill. The defendants specifically deny this allegation.
It is clear that Section 23-19-11 grants to the SWMC only the planning authority and responsibility for facility siting and does not create any substantive rights upon which the Town may rely as correctly argued by the Defendants. Before any site for a future landfill is ultimately accepted, the State Planning Council must certify that it conforms to the statewide plan but only after public notice and an opportunity to comment thereon is given. If a site is accepted and its location finalized then an application must be made to DEM for a refuse disposal license. During this siting procedure the Town will have an opportunity to air its views and objections. The court finds however that nothing in Section 23-19-11 or its subsections precludes the ultimate location of a future landfill in the Town.
Likewise, there is nothing in Section 23-19-34 which prohibits SWMC from siting a landfill on its buffer zone property located in the Town. Indeed, R.I.G.L. Section 23-19-34.1 permits SWMC to use the land acquired for the buffer zone in accordance with a plan submitted to and approved by DEM which will then afford the Town an opportunity to raise objections, if any. The court also finds that this section does not create by its terms any substantive rights upon which the Town may rely to restrict the actions of SWMC.
Count IV argues the unconstitutionality of R.I.G.L. §23-19-10.2 which forbids any municipality from causing any act to be done after December 31, 1988 which prohibits a solid waste disposal facility site within the municipality. The count was added in response to defendants' motion to dismiss relying on the language in the section. The count sets forth no allegations other than an argument that the section is unconstitutional. Since the motion to dismiss was withdrawn and the count contains no factual allegations central to the issues presented, it is dismissed sua sponte as being irrelevant to said issues.
For all of the foregoing reasons the court finds that neither the Consent Order, nor the two statutes relied upon by the Town, precludes the siting of additional or expanded landfills within the borders of the Town, including the so-called buffer zone, and Defendants' actions are not in violation thereof.
Defendants may present a Judgment for entry which is in accordance with the decision.
APPENDIX